HULL, Circuit Judge:
This case comes before this Court on Petitioner Warren Lee Hill, Jr.’s Application, under 28 U.S.C. § 2244(b)(3)(A), for permission to file a second or successive federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the district court. After review, we must deny the Application because Hill’s claim of mental retardation, proposed in his successive petition, was already presented in his first petition and is barred by the statutory prohibition in § 2244(b)(1). Additionally, Hill’s mental retardation claim challenges only his eligibility for a death sentence, and not whether he is “guilty of the underlying offense,” and thus does not fall within the narrow statutory exception in § 2244(b) (2) (B) (ii) anyway.
I. PROCEDURAL HISTORY
A.Malice Murder Conviction and Unanimous Death Sentence
In 1990, while serving a life sentence for murdering his girlfriend, Hill murdered another person in prison. Using a nail-studded board, Hill bludgeoned a fellow inmate to death in his bed. As his victim slept, Hill removed a two-by-six board that served as a sinkleg in the prison bathroom and forcefully beat the victim numerous times with the board about the head and chest as onlooking prisoners pleaded with him to stop. Although in jail for life for one murder, Hill continued to kill.
A jury unanimously convicted Hill of malice murder and unanimously imposed a death sentence. See Hill v. State, 263 Ga. 37, 427 S.E.2d 770, 774 (1993).
B. No Mental Retardation Claim at Trial or on Direct Appeal
In 1988, the State of Georgia abolished the death penalty for mentally retarded defendants. See O.C.G.A. § 17-7-131 (1988 statute prohibiting the death penalty where defendant proves mental retardation). Therefore, at the time of Hill’s 1991 trial, Georgia prohibited executing mentally retarded defendants. Yet at his trial and on direct appeal, Hill never claimed to be mentally retarded. Rather, it was five years after his 1991 trial that Hill claimed, for the first time he was mentally retarded and thus could not be executed.
Importantly, at all times herein, Hill ha,s never asserted mental retardation as a defense to his malice murder conviction. Instead, Hill’s mental retardation claim now and always has related to only his sentence.
C. 1996 Amendment to First State Ha-beas — First Claim of Mental Retardation
In 1994, Hill filed in state court a petition for habeas corpus that did not make any mental retardation claim.
Two years later, in 1996, Hill amended his state habeas petition to allege, for the first time, that he was mentally retarded and his mental retardation barred his death sentence. The court ordered mental evaluations, conducted a lengthy evidentia-ry hearing, and heard extensive testimony from mental health experts who had conducted tests and reviewed Hill’s school and medical records, his military and employment history, and voluminous other documents. The court also received affidavits *286 as to his abilities from 59 friends and family members of Hill and heard testimony from Hill’s trial counsel.
The state habeas court determined that Hill’s evidence failed to prove he was mentally retarded. In doing so, it employed the definition; of mental retardation in 0.C.G.A. § 17—7—131(a)(3), which provides that “mentally retarded” means (1) having “significantly subaverage general intellectual functioning,” (2) “resulting in or associated with impairments in adaptive behavior,” (3) “which manifested during the developmental period.” Georgia’s definition essentially tracks the clinical definitions mentioned by the Supreme Court in Atkins v. Virginia, 536 U.S. 304, 308 n. 3, 122 S.Ct. 2242, 2245 n. 3, 153 L.Ed.2d 335 (2002).
As to the first prong, the state habeas court found Hill established beyond a reasonable doubt his “significantly subaverage general intellectual functioning.”[1] While the court did not find an exact IQ score,psychologists had administered multiple tests, resulting in IQ scores ranging between 69 and 77.
As to the second prong of the mental retardation standard, however, the state habeas court found Hill had failed to show beyond a reasonable doubt that he had “impairments” in “adaptive behavior” such as “communication, self-care, home living, social/interpersonal skills, use of community resources, self direction, functional academic skills, work, leisure, health, and safety.” The court noted Hill’s (1) extensive work history and “apparent ability to function well in such employment,” (2) disciplined savings plans pursued to purchase cars and motorcycles, (3) military service, (4) active social life, (5) writing skills, and (6) ability to care for himself.[2]
The state court based its conclusion, in part, on a 35-page report prepared by three mental health experts. One expert, Dr. Thomas H. Sachy, a psychiatrist, evaluated Hill on November 22, 2000. The other two experts, Dr. Donald W. Harris, a psychologist, and Dr. J. Gary Carter, a psychiatrist,[3] evaluated Hill together on December 6, 2000. Based on their in-person .evaluations and the voluminous evidence of Hill’s adequate “adaptive behavior,” the experts determined that Hill was not mentally retarded and was malingering.
Among the evidence relied on by the experts and presented to the state habeas court, Hill’s military record was particularly meaningful. He entered the military at the rank E-l and, advancing each year, attained the rank of E-5 in five years.[4] *287 Hill was decorated as a .38 caliber sharpshooter. He received military education in nuclear weapons loading, aviation fund school, and corrosion control. He completed an 80-hour instructor training course. Hill also attended and completed a 2-week military course in leadership management education and training. He was qualified as an assistant supervisor and ordnance systems maintenance man and troubleshooter, with collateral duties in shop training, as a publications petty officer, as a nuclear conventional weapons load team member, and as a corrosion control/reclamation and salvage team member. Hill was qualified as a weapons technician and was a Human Relations council member. He completed a 2-week tour with a hometown recruiting program, played on the football team, and was Petty Officer of the Watch. Hill also functioned as an assistant work center supervisor, an ordnance troubleshooter, was CPR qualified, and played on an intramural basketball team.
Evaluations of Hill during his military duty contain these descriptions of him:
Dedicated and reliable petty officer. Completes all tasks expeditiously, at times under very adverse conditions. Quiet, friendly manner, and positive attitude greatly enhances squadron morale. Uniforms and appearance always outstanding. Actively supports the Navy’s equal opportunity goals. Good use of the English language orally and written. Strongly recommended for advancement and retention.
Similarly, Hill was reported to be:
[a] reliable individual and devoted second class petty officer. Works exceptionally well with others and assists in the training of weapons-loading team members. Implemented a new W/C tool control program and aided in the redesigning of the W/C technical Pubs library, both areas receiving an outstanding during the latest COMHEL WINGGRES visit. His quiet personality enhances squadron morale. Uniforms and appearance continually outstanding. . Actively supports the Navy’s equal opportunity goals. Demonstrates excellent command of the English language orally and written. Strongly recommended for advancement and retention in the Naval service.
Based on all of the evidence, the state habeas court concluded that Hill had not shown impairments in adaptive behavior and thus had not established his mental retardation beyond a reasonable doubt.
The Georgia Supreme Court affirmed. Head v. Hill, 277 Ga. 255, 587 S.E.2d 613 (2003). In doing so, it upheld the state habeas court’s findings and reasons for denying Hill’s mental retardation claims. See id. at 256-56, 587 S.E.2d at 617-18.
D. First Federal 28 U.S.C. § 2254 Petition — Filed October 5, 2004
On October 5, 2004, Hill filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia. The petition raised multiple mental retardation claims involving Hill’s death sentence, including a claim that because he had proved his mental retardation, the Eighth Amendment barred his execution.[5] After extensive briefing on this and other issues, the district court denied relief on November 7, 2007.[6]
*288 This Court granted a certificate of ap-pealability on limited issues. Subsequently, this Court en banc affirmed the district court’s denial of Hill’s § 2254 petition. Hill v. Humphrey, 662 F.3d 1335 (11th Cir.2011) (en banc). The United States Supreme Court denied certiorari. Hill v. Humphrey, — U.S. , 132 S.Ct. 2727, 183 L.Ed.2d 80 (2012).
The State initially set Hill’s execution for July 18, 2012 at 7:00 p.m., but rescheduled it for July 23, 2012 at 7:00 p.m.[7]
E. Second State Habeas — Filed July 18, 2012
On July 18, 2012, shortly before his scheduled execution, Hill filed a successive state habeas petition reasserting the same mental retardation claim. On July 19, 2012, the state habeas court' denied the claim. Hill appealed. On July 23, 2012, the Georgia Supreme Court found Hill’s claim was barred from review by Georgia res judicata principles, holding:
To the extent that Hill’s petition for a writ qf habeas [corpus] raised claims previously addressed by this Court in Hill’s- first state habeas proceedings, such claims are barred as res judicata. See Head v. Hill, 277 Ga. 255 (587 S.E.2d 613) (2003),...
Hill v. Humphrey, Case No. S12W1799 (Ga. July 23, 2012) (unpublished order). The United States Supreme Court denied certiorari as to the Georgia Supreme Court’s denial of Hill’s second state habeas petition. Hill v. Humphrey, — U.S. -, 133 S.Ct. 1324, 185 L.Ed.2d 233 (2013).
F. Lethal Injection Claims
Also during July 2012, Hill filed a separate civil action challenging the State’s method of his lethal injection on various grounds. On July 23, 2012, the state trial court rejected the lethal injection claim on the merits. Hill appealed to the Georgia Supreme Court, and, on July 23, 2012, that court entered a stay of execution to allow for consideration of those lethal injection claims. The Georgia Supreme Court granted a discretionary appeal, and later rejected Hill’s lethal injection claims on the merits and vacated the stay. Hill v. Owens, 292 Ga. 380, 738 S.E.2d 56 (2013).
G.Third State Habeas — Filed February 15, 2013
The State set Hill’s execution for February 19, 2013 at 7:00 p.m.
On February 15, 2013, Hill filed his third state habeas petition, this time asserting that certain prior mental health experts, including Dr. Thomas Sachy, had now modified their opinions about Hill’s mental capabilities. These mental health experts had not seen Hill since their evaluations in 2000 and had not administered any new tests to Hill.
Rather, as explained below, Hill’s pleadings admit that Dr. Thomas Sachy, on his own, read about Hill’s scheduled execution and contacted Hill’s attorney on July 27, 2012 to advise that his earlier 2000 conclusion in the state habeas court — that Hill was not mentally retarded — may have been in error. Dr. Sachy’s affidavit states:
In late July 2012, I noticed media reports about a man whom courts had found to be mildly mentally retarded and who was nevertheless facing execution. I then realized that this man was Warren Lee Hill, and I remembered that I had evaluated him for the government many years ago. Not realizing *289 that a stay of execution had already been entered in the case, I contacted Mr. Hill’s counsel on July 27, 2012, and offered to discuss the ease. I told counsel I felt that my previous conclusions about Mr. Hill’s mental health status were unreliable because of my lack of experience at the time, and I wanted to revisit the ease.
Pet. for Writ of Habeas Corpus 12 (quoting Dr. Thomas Sachy Aff.). Although Dr. Sachy contacted Hill’s attorney on July 27, 2012, Hill filed nothing regarding Dr. Sachy’s changing his opinion until February 15, 2013, right before his execution scheduled for February 19, 2013.[8]
In response to Hill’s third state habeas petition, the State pointed out that Hill was again raising the same, multiple claims of mental retardation that were previously adjudicated and denied by the state habeas courts and the Georgia Supreme Court. The State also stressed, among other things, that Hill’s claims in his third habeas petition remained barred under state law by Stevens v. Kemp, 254 Ga. 228, 327 S.E.2d 185 (1985).
On February 18, 2013, the state habeas court denied Hill’s third habeas petition concluding that it was procedurally barred and that he had not shown a miscarriage of justice:
This Court DISMISSES the instant action as procedurally barred as this is Petitioner’s third state habeas petition in this Court asserting the same claims. Stevens v. Kemp, 254 Ga. 228, 230 [327 S.E.2d 185] (198[5]). This Court does not find Petitioner has cited any new law to overcome the bar. Further, Petitioner’s “new evidence” does not establish a miscarriage of justice. Thus, the claims in this petition are barred by law from review. The instant petition is DISMISSED and this Court therefore DENIES Petitioner’s motion for stay of his execution.
Hill v. Humphrey, Habeas Corpus Action (Butts Cnty., Ga. Super. Ct. Feb. 18, 2013) (unpublished order).
After the denial of his third state habeas petition, Hill sought a stay of execution and filed an application for a certificate of probable cause to appeal to the Georgia Supreme Court, which denied his application and request for a stay of execution.
H. Application to File Successive § 2254 Petition
On February 19, 2013, just three hours before the scheduled execution, Hill filed in this Court an Application for leave to file a successive federal § 2254 habeas petition. In support of his Application, Hill refers to the same recanted evidence from the mental health experts on which he had based his third state habeas petition.
As he did in his third state habeas petition, Hill recounted how Dr. Thomas Sachy heard news reports about Hill’s pending execution and contacted Hill’s attorney on July 27, 2012. Although he had not seen Hill since 2000, Dr. Sachy had revisited his notes from his 2000 evaluation and concluded that his previous assessment was wrong. Hill filed Dr. Sachy’s affidavit, dated February 8, 2013, which states that he has changed his 2000 opinion. According to Dr. Sachy, his additional experience in practicing psychiatry since *290 2000 and new research studies by others caused him to conclude that: (1) Hill was not malingering during the 2000 evaluation; and (2) Hill’s Naval records were “not inconsistent with mild mental retardation.”
Hill also filed affidavits, dated February 11 and 12, 2013 respectively, by Drs. Donald Harris and James- Gary Carter. Dr. Harris, a psychologist, and Dr. Carter, a psychiatrist, both testified at the 2000 hearing that Hill was not mentally retarded. They did so after jointly conducting a two-hour, in person evaluation. In their 2013 affidavits, Drs. Harris and Carter each state they were contacted by Hill’s attorney in February 2013 and informed of Dr. Sachy’s new assessment. They then reconsidered their 2000 opinions and now consider Hill mildly mentally retarded. Like Dr. Sachy, Drs. Harris and Carter had not administered any new tests to Hill or even seen him in 13 years.[9]
After Hill’s Application was filed, this Court in an unpublished order granted a conditional stay of execution to permit further briefing by Hill, then the State, and then a reply by Hill. That extensive briefing is now complete, and thus wp proceed to rule on Hill’s Application.
II. DISCUSSION
A. Strict Federal Restrictions on Successive Petitions
Hill seeks to file a successive petition for habeas corpus under 28 U.S.C. § 2254. Because he already filed one § 2254 habe-as petition, Hill must meet, the strict requirements of 28 U.S.C. § 2244 before filing a successive federal habeas petition. 28 U.S.C. § 2244(b).
Section 2244 was enacted as part of the Anti-Terrorism and- Effective Death Penalty Act of 1996 (“AEDPA”). “[O]ne of the principal functions of AEDPA was to ensure a greater degree of finality for convictions.” Gilbert v. United States, 640 F.3d 1293, 1310 (11th Cir.2011) (en banc); see also Johnson v. United States, 340 F.3d 1219, 1224 (11th Cir.2003); Jones v. United States, 304 F.3d 1035, 1039 (11th Cir.2002) (“A fundamental purpose for the AEDPA was to establish finality in post-conviction proceedings.”). The Supreme Court has instructed that AEDPA’s purpose is to advance the principles of comity, finality, and federalism. Williams v. Taylor, 529 U.S. 420, 436, 120 S.Ct. 1479, 1490, 146 L.Ed.2d 435 (2000). As we have explained:
The statutory bar against second or successive motions is one of the most important AEDPA safeguards for finality of judgment.... “The central purpose behind the AEDPA was to ensure greater finality of state and federal court judgments in criminal cases, and to that end its provisions greatly restrict the filing of second or successive petitions.”
Gilbert, 640 F.3d at 1311 (quoting Gonzalez v. Sec’y for Dep’t of Corrs., 366 F.3d 1253, 1269 (11th Cir.2004) (en banc), aff'd on other grounds sub nom., Gonzalez v. Crosby, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005)); see also Tyler v. Cain, 533 U.S. 656, 661, 121 S.Ct. 2478, 2481-82, 150 L.Ed.2d 632 (2001) (“AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications.”). “If second and successive motions are not ‘greatly restricted],’ there will be no end to collateral attacks on *291 convictions and sentences, and there will be no finality of judgment.” Gilbert, 640 F.3d at 1311 (quoting Tyler, 533 U.S. at 661, 121 S.Ct. at 2481).
One tool AEDPA uses to restrict successive petitions is the requirement that petitioners, like Hill, obtain permission from this Court before they can file a successive § 2254 petition in a district court. Specifically, § 2244(b)(3)(A) requires a state prisoner seeking to file a second or successive habeas petition to move this Court “for an order authorizing the district court to consider the application.” 28 U.S.C. § 2244(b)(3)(A).
B. 28 U.S.C. § 2244(b)(1)
In ruling on an application to file a successive petition, this Court must make a threshold determination of whether the claim to be presented in the second or successive petition was presented in the first petition. We do that because § 2244(b)(1), added by AEDPA, provides that “[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.” 28 U.S.C. § 2244(b)(1) (emphasis added). It provides no exceptions.
As held by the Supreme Court, “[ujnder § 2244(b), the first step of analysis is to determine whether ‘a claim presented in a second or successive habeas corpus application’ was also ‘presented in a prior application.’ If so, the claim must' be dismissed; if not, the analysis proceeds to whether the claim satisfies one of two narrow exceptions.” Gonzalez, 545 U.S. at 530, 125 S.Ct. at 2647 (emphasis added); see also Tyler, 533 U.S. at 661-62, 121 S.Ct. at 2481-82; In re Lambrix, 624 F.3d 1355, 1362 (11th Cir.2010) (“Because Claims 7, 8, and 10 were previously presented by Lambrix, they cannot be the basis of a claim for leave to file a successive habeas petition.” (citing 28 U.S.C. § 2244(b)(1))); Gonzalez, 366 F.3d at 1269 (noting the “total ban on claims that were presented in a prior petition” (emphasis added)).
Here, Hill’s first federal habeas petition in 2004 was a “prior application” for the purposes of § 2244(b)(1). It contained the same claim that Hill wants to raise in the successive petition he has applied to file. Therefore, we must deny Hill’s Application and dismiss the claim. The statute does not say “may be dismissed,” it says “shall be dismissed.” 28 U.S.C. § 2244(b)(1).
More specifically, in his first federal ha-beas petition in 2004, Hill included the following claim as “Claim One”: “Mr. Hill is mentally retarded, and his execution would violate the Eighth and Fourteenth Amendments to the United States Constitution.” See Hill v. Schofield, No. 04-cv-00151-WLS, DE 2 at i (“Petition”) (Table of Contents, stating that Claim One of the petition is that “Mr. Hill is mentally retarded, and his execution would violate the Eighth and Fourteenth Amendments to the United States Constitution.”).[10] Hill’s claims are then broken up into subparts. His first argument in part A of Claim One was that he had proven he was mentally retarded and thus could not be executed under the Eighth Amendment. Id. at i, 12-19. In part A of Claim One, Hill specifically argued that he met the diagnostic requirements of mental retardation, i.e., that he has significant defects in intellectual functioning and significant limitations in adaptive functioning. In fact, he specifi *292 cally argued that although the state habe-as court found that he had not established significant adaptive deficits, the evidence showed to the contrary. Id. at i, 17-19.[11]
As a separate argument in part C of Claim One, Hill also asserted that Georgia’s statutory requirement that a defendant prove mental retardation beyond a reasonable doubt violated the Eighth and Fourteenth Amendments. Id. at i, 25-32. In his first federal habeas proceedings, Hill thoroughly litigated not only his mental retardation claim, but also his allegations concerning the constitutionality of Georgia’s burden of proof for such mental retardation claims.
Likewise, in the current Application, Hill requests permission to file a second or successive § 2254 petition on the basis that he “cannot be executed due to his mental retardation.” Hill asserts that he “is mentally retarded ... and must be protected from wrongful execution.” Again, Hill asserts that, because he is mentally retarded, his execution would violate the Eighth Amendment to the United States Constitútion, and the Supreme Court’s decision in Atkins.
We fully recognize that Hill has now submitted new evidence to bolster these same mental retardation claims. In his initial state habeas proceedings, he presented a large volume of evidence, including school records, military records, multiple test results, and extensive testimony from experts, family members, and friends. Petition at i, 10-19. In the instant Application, he refers to the same supporting evidence, but seeks to bolster his claim by filing the new February 2013 affidavits of Drs. Sachy, Harris, and Carter recanting their earlier opinions.
Although he has some new evidence, Hill nevertheless asserts in his Application the same “federal basis of relief from the state court’s judgment” he asserted in his first federal habeas petition — that he is mentally retarded and cannot be executed pursuant to the Eighth Amendment. See Gonzalez v. Crosby, 545 U.S. 524, 530, 125 S.Ct. 2641, 2647, 162 L.Ed.2d 480 (2005) (defining § 2244(b)(l)’s term “claim” as “ah asserted federal basis for relief from a state court’s judgment of conviction”). Hill cannot convert his previously asserted “claim” into a wholly new “claim” merely by coming forward with new supporting evidence or even new legal arguments. At an irreducible minimum, what Hill is asserting now is precisely the same thing that he asserted in his initial habeas petition — he is and has always been mentally retarded and his execution would therefore violate the Eighth and Fourteenth Amendments of the United States Constitution undef the Supreme Court’s decision in At *293 kins. Here, it is new evidence in support of the same claim; it is not the basis of a new claim.
Tellingly too, Hill does not cite any authority suggesting that new supporting evidence or a new legal argument can transform a previously asserted claim into a wholly new claim. Rather, this Court and other circuits have repeatedly held' that new evidence and new legal arguments in support of a prior claim are insufficient to create a new claim and avoid § 2244(b)(l)’s bar on successive petitions.
For example, in In re Mills, 101 F.3d 1369 (11th Cir.1996), this Court held that new supporting evidence is insufficient to avoid § 2244(b)(l)’s scope. There, a state prisoner’s application to file a successive § 2254 petition alleged, inter alia, the State withheld information regarding the ways it induced its key trial witness to testify against petitioner. Id. at 1371. The state prisoner’s first § 2254 petition alleged the State improperly coerced the trial witness to testify. Id. In his application to file a successive § 2254 petition, the state prisoner bolstered his coercion allegation by quoting from a recently obtained affidavit of the trial witness. Id. This Court denied the application because the claim, although supported by new evidence, was “presented in a prior petition.” Id.
Our sister circuits also have concluded that newly discovered factual support for a prior claim does not justify the filing of a successive § 2254 petition. For example, in Felder v. McVicar, 113 F.3d 696 (7th Cir.1997), the Seventh Circuit considered an application to file a successive § 2254 petition alleging ineffective assistance of trial counsel based on counsel’s failure to interview two eyewitnesses who, according to the petitioner, had exculpatory information. Id. at 697. The state prisoner made the same claim in his first federal habeas petition; however, he voluntarily dismissed that petition when he was unable to obtain affidavits from the two eyewitnesses. Id. at 697-98. In support of his application to file a second petition, the state prisoner came forward with the eyewitness affidavits. Id. at 698. Nevertheless, the Seventh Circuit held that § 2244(b)(1) barred the application because the state prisoner had already asserted the ineffective assistance of counsel claim, albeit with a lot less evidence. Id. The court reasoned that while “[a] newly discovered factual basis for a claim may permit filing a successive petition raising a new claim, ... it does not permit filing a successive petition raising the same claim that was[1] presented in a previous petition.” Id. (internal citations omitted).
Similarly, a new legal argument, even one that may entitle a habeas petitioner to relief, does hot make a prior “claim” a new “claim” for the purpose of § 2244(b)(1). See, e.g., Thompson v. Nixon, 272 F.3d 1098, 1100-01 (8th Cir.2001) (concluding that, where state prisoner’s federal habeas petitions argued that jury instructions violated the Due Process ‘ Clause, the Supreme Court’s new Fiore v. White[12] decision supporting his' argument did not “make his claim a new one”; instead “Fiore simply provide[d] a new argument ... in support of the same due-process claim that [was] presented twice before.”).[13]
*294 Similarly, in Babbitt v. Woodford, 177 F.3d 744 (9th Cir.1999), the Ninth Circuit denied a state prisoner’s application to file a successive § 2254 petition because the petition was raising essentially- the same claim raised before. Id. at 746, 748. The Ninth Circuit concluded that § 2244(b)(1) barred the state prisoner’s federal habeas claim based on ineffective assistance of counsel because the state prisoner asserted an ineffective assistance of counsel claim in a prior federal habeas petition. Id. at 746. It did not matter to the Ninth Circuit that the petitioner previously based his claim on his attorney’s alleged failure to raise post-traumatic stress disorder as an affirmative defense at trial or as a mitigating factor at sentencing, whereas he later based his claim on new factual allegations of his attorney’s ineffectiveness, including his attorney’s alleged alcohol use during trial. Id. ■ This was because “the basic thrust or gravamen of [the petitioner’s] legal claim, [was] the.same ....” Id. (internal quotation marks omitted).[14]-
These cases are instructive. Hill -suggests that because he has new evidence to support his claim — the affidavits of Drs. Sachy, Harris, and Carter — his present mental retardation claim is new. But in Mills, this Court held that new evidence does not constitute a new claim. See 101 F.3d at 1371. Hill also reasons that because he no longer raises the burden of proof issue, .his Eighth Amendment-mental retardation claim is new. Hill’s argument seems to be that he now claims he is mentally retarded , beyond a reasonable doubt, whereas he asserts that previously he only claimed he was mentally retarded by a preponderance of the evidence and that Georgia’s higher standard was unconstitutional. However, Hill’s burden of proof argument was only one subpart (part C) of his Eighth Amendment claim. Hill now is merely offering new evidence or a new legal argument in support of the same Eighth Amendment claim — that his mental retardation bars his execution under the Eighth Amendment — that we previously rejected. See Thompson, 272 F.3d at 1100-01. The core factual allegation remains that Hill is mentally retarded, and the core legal basis for the claim remains that his execution would violate the Eighth and Fourteenth Amendments under Atkins. “,[T]he basic thrust or gravamen of [Hill’s] legal argument is the same.... ” See Babbitt, 177 F.3d at 746 (internal quotation marks omitted). The burden of proof issue does not alter the core mental retardation claim.
Not only does precedent dictate our conclusion, so too do reason and the finality interests underlying AEDPA. If all that was required to reassert years later a previously rejected claim was a change in testimony, every material witness would have the power to upset every notion of finality by simply - changing his testimony. And, as this case illustrates, opinion testimony can be changed with great ease (indeed, even without seeing Hill in 13 years, administering any new tests, or reviewing new documents, three witnesses pivoted *295 their positions 180 degrees). Moreover, there is no reason to limit the change in evidence theory to changes in testimony of previous witnesses. New witnesses could be rounded up, and every new witness would transform the same old claim into a brand new one. There is no good reason to read “claim” as used in § 2244(b)(1) unnaturally to mean “new evidence supporting the claim” or a “new argument supporting the claim.”
And there is every reason not to read it in that unnatural way. When it enacted AEDPA, Congress sought to bolster or add to the then-existing limitations on judicial power to grant habeas relief. See Tyler v. Cain, 533 U.S. 656, 661, 121 S.Ct. 2478, 2481-82, 150 L.Ed.2d 632 (2001) (“AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications.”); Stewart v. United States, 646 F.3d 856, 860 (11th Cir.2011) (referencing “Congress’s clear intention to limit ‘second or successive’ attempts at post-conviction relief’).
Permitting a second or successive petition to be filed whenever expert witnesses decide to change their earlier opinions would not “greatly restrict[ ] the power of federal courts” to entertain second or successive petitions, Tyler, 533 U.S. at 661, 121 S.Ct. at 2481, but instead would have exactly the opposite effect — permitting second or successive petitions where pre-AEDPA law would not have. That is why in § 2244(b)(1), “claim” means claim, not evidence or arguments supporting a'claim. And that is why the Supreme Court has instructed us that “[i]f the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases.” Tyler, 533 U.S. at 661, 121 S.Ct. at 2482 (citing 28 U.S.C. § 2244(b)(1)). “In all cases” means all cases. Section 2244(b)(1) bars the petition Hill requests authorization to file.
C. 28 U.S.C. § 2244(b)(2) •
Alternatively, even if we did view Hill’s present claim as a new one that he did not present in his prior federal petition, we are nevertheless required to deny his Application to file a successive petition because he has not satisfied the requirements of 28 U.S.C. § 2244(b)(2).
Under AEDPA, this Court may now grant authorization to file a successive federal habeas petition only if the applicant satisfies one of the two narrow statutory exceptions in § 2244(b)(2), stated as:
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of. the underlying offense.
28 U.S.C. § 2244(b)(2) (emphasis added). This Court “may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection [§ 2244(b)].” Id. § 2244(b)(3)(C). A prima facie showing is “a sufficient showing of possible merit to warrant a fuller exploration by the district court.” In re Turner, 637 F.3d 1200, 1204 (11th Cir. 2011) (internal quotation marks omitted).
*296 Hill’s Application does not meet either of the two narrow exceptions enunciated in § 244(b)(2). As to the first exception, Hill concedes that he does not rely on a new rule of constitutional law that was previously unavailable. Indeed, under Georgia law, Hill had a right to raise his mental retardation claim at trial and his state habeas cases long before the Supreme Court’s decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). And, as outlined above, Hill has already raised the mental retardation issue multiple times in state and federal courts, and all of those courts have rejected his claims. See Hill v. Humphrey, 662 F.3d 1335, 1340-43 (11th Cir.2011) (en banc) (outlining procedural history of case). And, .in any event, the Supreme Court decided Atkins in 2002, well before Hill filed his first federal habeas petition in 2004. Hill’s Atkins claims were not only available to him, but were pleaded by him and rejected before in both state and federal courts.
As to the second exception in § 2244(b)(2)(B) concerning newly discovered evidence of actual innocence, Hill has failed to satisfy that exception too. Even assuming arguendo Hill has shown due diligence, the new evidence (i.e., the recanted expert opinions) does not establish that, “but for constitutional error, ho reasonable factfinder would have found [Hill] guilty of the underlying offense.” See 28 U.S.C. § 2244(b)(2)(B)(ii) (emphasis added).[15] Again, because the purpose of AEDPA is to greatly restrict the power of federal courts to entertain second or successive petitions, the Supreme Court has made clear that this is a “narrow exception! ]” for claims “that call into question the accuracy of a guilty verdict.” Tyler, 533 U.S. at 661-62, 121 S.Ct. at 2481-82 (emphasis added).
Hill has not pointed to any newly discovered facts that establish, or even could possibly establish, his innocence of the underlying offense of murder. To the contrary, Hill has never denied that he was guilty of intentionally murdering his fellow inmate, and even now he does not challenge his murder conviction. Hill’s claim is a pure sentencing claim. His claim is that under Atkins, he cannot be executed because he is mentally retarded. But Atkins had nothing to do with convictions. Hill’s “underlying, offense” within the meaning of § 2244(b)(2)(B)(ii) is murder, not a death sentence. As the Georgia Supreme Court described it, “Warren Lee Hill was convicted of murder by a jury in Lee County and sentenced to death.” Hill v. State, 263 Ga. 37, 37, 427 S.E.2d 770, 772 (1993). His conviction was for the offense of murder; his sentence, based on the aggravating and mitigating circumstances *297 that were established at the later sentencing hearing, was death. A sentence is not a conviction for an “underlying offense.” See 28 U.S.C. § 2244(b)(2)(B)(ii). '
Importántly here, the language of “guilty of the underlying offense” is plain and unambiguous. “Indeed, ‘[t]he first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute’s meaning is plain and unambiguous, there is no need for further inquiry.’ ” In re Davis, 565 F.3d 810, 823 (11th Cir.2009) (quoting United States v. Silva, 443 F.3d 795, 797-98 (11th Cir.2006)). “Put differently, we ‘must presume that Congress said what it meant and meant what it said.’ ” Davis, 565 F.3d at 823 (quoting Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1167 (11th Cir.2003)).
The first term that Hill cannot overcome is the word “guilty.” “Guilty” means “[h]aving committed a crime” or “responsible for a crime.” Black’s Law Dictionary 776 (9th ed. 2009); see also Webster’s Third New International Dictionary Unabridged 1009-1010 (2002) (defining “guilt” as “responsibility for an offense” or “the fact of having committed a breach of conduct esp. violating law”). Hill’s Atkins claim, regardless of his new evidence, does not call into question the fact that he committed the crime of murder, nor does it controvert his responsibility for that act. Hill remains guilty of the “underlying” crime.[16]
The statutory use of the word “underlying” is also significant, drawing further contrast between the offense of conviction and the ensuing sentence. If “guilty of the underlying offense” is read to cover sentencing claims as well, then the word “underlying” is rendered utterly superfluous. See Dole Food Co. v.. Patrickson, 538 U.S. 468, 476-77, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003) (“Absent a statutory text or structure, that requires us to depart from normal rules of construction, we should not construe the statute in a manner that is strained and, at the same time, would ren-, der a statutory term superfluous.”). When you combine the term “guilty” with the word “underlying,” it is clear that the statute sharply distinguishes between a petitioner’s offense of conviction and his sentence. We are unable to transmute a claim that a petitioner is not eligible for a capital sentence into a claim that the petitioner is not “guilty of the underlying offense.”
Given the plain and unambiguous language in. the statute, this Court repeatedly has held that federal law does not authorize the filing of a successive application under § 2244(b)(2)(B) based on a sentencing -claim even in death cases. In .re Schwab, 531 F.3d 1365, 1366-67 (11th Cir. 2008) (denying a death row inmate’s application for a successive habeas petition premised on a change of expert opinion purporting to establish the inmate’s “inno- *298 cen[ce] of the death penalty,” because (1) the inmate’s application did not assert “a constitutional error, just a change in the opinion of an expert witness,” and (2) “the asserted change in opinion [went] to the existence of mitigating circumstances, not to whether [the inmate was] guilty of the underlying offense”); In re Diaz, 471 F.3d 1262, 1263-64 (11th Cir.2006) (per curiam) (“Because [Petitioner] does not, and could not, suggest that the alleged new evidence would have altered the jury finding on his guilt of the underlying offense, he is not eligible for relief under the second exception.”); In re Provenzano, 215 F.3d 1233, 1237 (11th Cir.2000) (“[Petitioner’s] innocence-of-the-death-penalty claim does not fit within either § 2244(b)(2) exception.”); In re Jones, 137 F.3d 1271, 1273-74 (11th Cir.1998) (denying an application to file a second or successive habeas petition on a claim that execution by electric chair violates the Eighth Amendment, because the newly discovered evidence exception in § 2244(b)(2)(B) does not apply to sentence-related claims); In re Medina, 109 F.3d 1556, 1565 (11th' Cir.1997) (“[T]he plain terms of [the] exception make it clear that it is limited to claims going to whether the applicant is ‘guilty of the underlying offense.’ ”), overruled on other grounds by Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998); see also In re Schwab, 506 F.3d 1369, 1370 (11th Cir.2007) (denying a death row inmate’s application to file a second or successive habeas petition because it neither relied on a new rule of constitutional law, “nor involve [d] facts relating to guilt or innocence”).[17] Hill essentially concedes our Court’s holding in In re Medina is against him.
Notably- too, the Fifth Circuit has construed similar plain language in 28 U.S.C. § 2255(h) — “guilty of the offense” — as not applying to sentences and not allowing the filing of a successive § 2255(h) motion where the movant claimed- he was “not guilty of the death penalty” or “not eligible for a death sentence.” See In re Webster, 605 F.3d 256, 258-59 (5th Cir.2010). Section 2255(h)(1) provides that
[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain ... newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense....
28 U.S.C. § 2255(h)(1)’ (emphasis added). The movant in Webster urged the Fifth Circuit “to read ‘offense’ broadly so that § 2255(h)(1) would cover not only a claim that a prisoner is not guilty of the offense of conviction, but also a claim that he is ‘not guilty of the death penalty.’ ” 605 F.3d at 258.
Rejecting that argument and denying Webster’s application to file a successive § 2255(h) motion, the Fifth Circuit stressed three points. First, “there is no reason to believe that Congress intended the language ‘guilty of the offense’ to mean ‘eligible for a death sentence.’ ” Id. (quoting 28 U.S.C. § 2255(h)(1)). Secondly, “[h]ad Congress wanted the provision to cover challenges to a sentence — even if only to a death sentence — it easily could have referenced sentences explicitly in the text....” Id. Third, Congress “elected to couch § 2255(h)(1), as well as *299 § 2244(b)(2)(B)(i i), in the markedly different, unmistakable terms of guilt of the offense.” Id. at 259; see also Hope v. United States, 108 F.3d 119, 120 (7th Cir. 1997) (“We conclude that a successive motion under 28 U.S.C. § 2255 (and presumably a successive petition for habeas corpus under section 2254, governing- habeas corpus for state prisoners, which has materially identical language) may not be filed' on the basis of newly discovered evidence unless the motion challenges the conviction and not merely the sentence.”); cf. Wright v. Angelone, 151 F.3d 151, 164 n.' 8 (4th Cir.1998) (dicta) (noting in a procedural-default case under 28 U.S.C. § 2254(e)(2)(B), that “other circuit courts narrowly have interpreted the identical language in § 2244(b)(2) to require that habeas petitioners demonstrate actual innocence of the underlying crime to file a successive habeas petition on the basis of newly discovered evidenee[,]” and thus, “[a] claim of ‘innocence of the death penalty’ only is no longer sufficient to warrant review”).[18]
In sum, as this Court held, “ ‘Our function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to ‘improve’ statutes by altering them.’ ” Davis, 565 F.3d at 823 (quoting Wright v. Sec’y for the Dep’t of Corrs., 278 F.3d 1245, 1255 (11th Cir.2002)). As the statute in § 2244(b)(3)(C) makes clear, this Court may authorize the filing of a successive petition only if Hill’s Application makes a prima facie showing that the proposed petition satisfies one of the narrow exceptions in § 2244(b)(2). Even if § 2244(b)(1) did not bar Hill’s attempt to file a second or successive petition, he has not, and cannot, meet the statutory requirements in § 2244(b)(2) for authorization to file one. Therefore, this Court is not authorized to grant Hill permission to file a successive federal habeas petition.
Finally, we have considered with care and caution our colleague’s dissent. We are required^ however, to apply the rules of AEDPA and, more particularly, the stringent rules found in § 2244(b)(1) and (b)(2) that Congress has enacted regarding second or successive petitions. The unequivocal and plain text compels this result.
D. Sawyer Exception Does Not Survive AEDPA
Given' that Hill’s sentence claim does not fall within the § 2244(b)(2)(B) exception, we note that Hill also asks us to grant equitable relief by applying a pre-AEDPA exception to the bar on successive habeas petitions. Our precedent and-AEDPA’s-plain terms also foreclose that request too.
Hill relies primarily on the pre-AEDPA decision in Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), where the Supreme Court considered an exception to the judicially-developed bar on second or successive habeas petitions. Id. at 346-47, 112 S.Ct. at 2523. Prior to AEDPA, Supreme Court decisions barred second or successive habeas petitions unless the petitioner could establish cause and prejudice or a miscarriage of justice. Id. at 338, 112 S.Ct. at 2518. To prove-a miscarriage of justice, a petitioner had to show actual (factual) innocence. Id. at 339, 112 S.Ct. at 2518-19.
In Sawyer, the Supreme Court held that the “actual innocence” exception applied to claims asserting innocence of facts under *300 lying a petitioner’s eligibility for capital sentencing. Id. at 346-47, 112 S.Ct. at 2523. To bring a claim within the miscarriage of justice exception to the bar on successive habeas petitions, the Supreme Court required a petitioner to present evidence establishing “a fair probability that a rational trier of fact would have entertained a reasonable doubt as to the existence of those facts which are prerequisites under state or federal law for the imposition of the death penalty.” Id. at 346, 112 S.Ct. at 2523 (internal quotation marks omitted).
The pre-AEDPA bar on successive ha-beas petitions was judge-made. So too were its exceptions. When it enacted AEDPA, Congress codified the bar on successive habeas petitions, but not any pre-AEDPA exceptions. In their place, Congress crafted narrow exceptions. The Supreme Court has recognized that the pre-AEDPA Sawyer exception did not survive the plain language of § 2244(b)(2). It has explained:
AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications. If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases. § 2244(b)(1). And if the prisoner asserts a claim that was not presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions. One of these exceptions is for claims predicated on newly discovered facts that call into question the accuracy of a guilty verdict. § 2244(b)(2)(B). The other is for certain claims relying on new rules of constitutional law. § 2244(b)(2)(A).
Tyler, 533 U.S. at 661-62, 121 S.Ct. at 2481-82 (emphasis added). The Supreme Court has said there are only two narrow statutory exceptions, not that there are three exceptions — the two in the statute plus a third one that existed before the statute was enacted. Simply put, the Sawyer exception for actual innocence of the death penalty is not among the exceptions Congress chose to enact. See 28 U.S.C. § 2244(b)(2).
This Court, en banc, has already held that Congress’s failure to codify the Sawyer exception was meaningful and that the Sawyer exception does not survive AED-PA. See Gilbert, 640 F.3d at 1322. In Gilbert, a § 2255 movant attempted to take advantage of the Sawyer exception to obtain relief from his sentence. We gave a number of independently alternative reasons for not applying that exception in his case. Id. at 1320-23. One of the reasons was that the Sawyer exception did not survive the enactment of AEDPA. Id. at 1322. We quoted at length and with approval the Seventh Circuit’s decision in Hope v. United States, 108 F.3d 119 (7th Cir.1997), which held that the “judge-fashioned” Sawyer exception does not survive AEDPA because “[t]he exception[s] in the new law [are] graven in statutory language that could not be any clearer.” Hope, 108 F.3d at 120. Then we adopted that holding as our own. Gilbert, 640 F.3d at 1322 (“In other words, the actual innocence of sentence exception to the bar against second or successive motions involving sentence claims, as narrow as it was, did not survive AEDPA. For all of these reasons we conclude that the Sawyer actual innocence of sentence exception does not apply. ...” (emphasis added)).[19]
We acknowledge that Gilbert dealt with a § 2255 motion based on an erroneous *301 application of the United States Sentencing Guidelines, not a § 2254 habeas petition challenging a state death sentence. However, in Gilbert, this Court did not suggest that the Sawyer exception remains viable in some circumstances not present in that case. Rather, this Court made clear that AEDPA forecloses the Sawyer exception in all circumstances, including § 2254 challenges to state death sentences. Gilbert, 640 F.3d at. 1322.
This holding of the en banc court in Gilbert is consistent with our decisions in Schwab, Diaz, Provenzano, Jones, and Medina. Each of those cases involved challenges to state death sentences. Yet in none of them did we apply the Sawyer exception, although the exception might have been relevant under pre-AEDPA law. To the extent that our precedent was previously unclear, we now clarify it— post-AEDPA, there is no Sawyer exception to the bar on second or successive habeas corpus petitions for claims asserting “actual innocence of the death penalty.”[20] Thus, this Court is not authorized to grant Hill’s Application on this basis either.
III. CONCLUSION
For all of these reasons, we DENY Hill’s Application under 28 U.S.C. § 2244(b)(3)(A) for permission to file a second or successive petition for writ of habe-as corpus in the district court. We also VACATE the conditional stay of execution entered on February 19, 2013.
APPLICATION DENIED; STAY VACATED.

. Before trial in 1991, clinical, psychologist William Dickinson evaluated Hill using the • ■ Wechsler Adult Intelligence Scale, Revised ("WAIS-R”) test. Hill’s full-scale IQ score on the WAIS-R was 77. Dickinson also administered the Peabody Picture Vocabulary Test ("ppvr”), on which Hill earned an estimated IQ score of 74. Records show Hill took the PPVT when he was in second grade and scored a 75.
In 1997, in Hill’s state habeas proceedings, Dr. Daniel Grant evaluated Hill using the Stanford-Binet Intelligence Test, and Hill received an IQ score of 72. In 2000, Dr. Jethro Toomer administered the Wechsler Adult Intelligence Scale III ("WAIS-III”), on which ' Hill earned a full-scale IQ score of 69.
In a 2000 affidavit, Dickinson opined that the 1991 WAIS-R overestimated Hill’s IQ by 3-7 points; given Hill’s original score of 77, this results in a range of 70 to 74.

. The state habeas court did not discuss the third prong of the mental retardation test, which is that the onset of it must have been before age 18.

. In 2000, Dr. Carter was the Clinical Director of Forensic Services at Central State Hospital.

. Hill was eligible for an E-6 promotion in the military; however, he was demoted not because of any mental inability, but because he murdered his girlfriend.

. Hill also argued that Georgia’s standard of proof — beyond a reasonable doubt — was unconstitutional.

. On August 22, 2008, the district court denied Hill’s timely filed Motion to Alter and Amend Judgment.

. On June 16, 2012, the Georgia Board of Pardons and Paroles denied Hill’s petition for clemency.

. Hill's attorney candidly acknowledges that Dr. Sachy contacted him in July 2012 “after a temporary stay had been entered in his case” by the Georgia Supreme Court. Hill's attorney implies that he did not immediately seek affidavits from Dr. Sachy and the other experts because he was concentrating on the lethal injection claims in July 2012 to February 2013 and "had no knowledge as to when the Georgia Supreme Court would issue a decision in the case.”

. Notably, Hill did not attach to his third state habeas petition, or to his instant Application, any affidavit prepared by a mental health expert who had evaluated him after December 2000. Drs. Sachy, Harris, and Carter each base their revised opinions on reconsideration of their December 2000 evaluations.

. We attach, a copy of the first page of the table of contents to Hill’s first federal habeas petition as "Appendix A.”

. After several pages of explaining why the evidence showed that Hill met the criteria for mental retardation, the first federal habeas petition reads as follows:
In its initial order, the habeas court held that Mr. Hill had "failed to show beyond a reasonable doubt that he possesses significant deficits in adaptive skills.” Order of May 2002 at 6. The habeas court found that doubt existed' because Mr. Hill had a "consistent work ethic” and extensive work history; was able to purchase vehicles; performed well in the military; dated girls; and wrote several letters to his counsel that were "grammatically lacking,” but logical.
As stated above, these factors are not inconsistent with mental retardation nor do they preclude a diagnosis of mental retardation. By relying upon such facts to establish "doubt,” the habeas court fell into a common trap: the misconception that mildly mentally retarded persons cannot accomplish such things.
Petition at 17 (second emphasis added). Indeed, from the very beginning, Hill has argued that he is "mentally retarded within the meaning of OCGA § 17-7-131 et seq.,” which requires mental retardation to be proven beyond á reasonable doubt.

. 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001).

. In Thompson, the state prisoner did not file a § 2244(b)(3)(A) application, but filed a motion asking the Eighth Circuit to recall its mandate denying his § 2254 petition. 272 F.3d at 1099. Specifically, the state prisoner argued that the Supreme Court's decision in Fiore, issued after the Eighth Circuit’s mandate, established that the trial court’s jury instructions in his case violated the Due Pro *294 cess Clause of the Fourteenth Amendment. Id. at 1099. The Eighth Circuit declined to recall the mandate, concluding that the state prisoner's claims in support of his motion to recall the mandate were successive and thus subject to § 2244(b)(1). Id.

. Similarly, in Cooper v. Brown, 510 F.3d 870 (9th Cir.2007), the Ninth Circuit concluded that "[a] claim is not newly presented merely because the petitioner offers new factual bases in support of a legal claim that has already been raised.” Id. at 918 (emphasis added). That is exactly what Hill has done here. He has come forward with additional proofs in support of the same core claim— namely, that he is mentally retarded and that therefore his execution would violate the Eighth and Fourteenth Amendments.

. The State vigorously argues that Hill has not come close to showing that the factual predicate could not have been discovered previously through due diligence because: (1) the experts based their change of their staunchly held opinions on supposedly "new advancements” in assessing adaptive deficits, but (2) those alleged advancements are not new and were available to Hill and the experts in 2000 at the time of the first.state habeas hearing.
The State also points out that the experts allege that they did not have, in 2000, the information that Hill could have served in the Navy as a mentally retarded individual, but that the record shows the experts had Hill’s military records, reviewed them prior to their 2000 testimony, and found they undermined Hill's claim of mental retardation. According to the State, the experts also reviewed the affidavits of Dr. Garrett Duckworth and Chief Warren O'Bryant prior to the 2000 state ha-beas and those affidavits are consistent with the testimony of Drs. Stonefeld and Brittain regarding serving in the military if mentally retarded. Thus, the State emphasizes that the basis for the experts’ change of opinion was already available before their 2000 testimony. We ultimately need not reach this due diligence issue given our other rulings above.

. Hill points out that the Georgia statutory scheme requires that a defendant be both guilty and not mentally retarded before receiving a death sentence. This argument cuts against him. It demonstrates that the concepts of guilt and mental retardation are distinct and independent; that is, Hill can be found guilty of murder in Georgia and yet still be mentally retarded. See O.C.G.A. § 17-7-131(c) (providing for verdict of “guilty but mentally retarded”). In other words, what the statute does is prohibit a death sentence, not a verdict of guilt. Id. § 1-Y — 7—131 (j) (“In the trial of any case in which the death penalty is sought ..., should the judge find in accepting a plea of guilty but mentally retarded or the jury or court find in its verdict that the defendant is guilty of the crime charged but mentally retarded, the death penalty'shall not be imposed and the court shall sentence the defendant to imprisonment for life.” (emphasis added)).

. In Ward v. Hall, 592 F.3d 1144 (11th Cir. 2010), this Court held that similar language in 28 U.S.C. § 2254(e)(2), authorizing federal evidentiary hearings, did "not apply to issues relating to the sentencing phase of a trial.” Id. at 1161. We construed “guilt of the underlying offense” to mean exactly what it says and nothing else. See id.

. But see Thompson v. Calderon, 151 F.3d 918, 923-24 (9th Cir.1998) (en banc) (holding that petitioner’s "claim that he is ineligible for the death penalty due to the constitutional infirmity of [his] ... conviction ... states a claim under § 2244(b)”).

. The Fifth Circuit has also followed Hope's conclusion that the Sawyer exception did not survive the AEDPA amendment in § 2255(h). See Webster, 605 F.3d at 258.

. Hill does not argue that our failure to recognize the Sawyer exception to § 2244(b)(2) results in a suspension of the writ of habeas corpus in violation of Article I, Section 9, Clause 2 of the United States Constitution. Nevertheless, we make clear that our decision does not leave Hill without the ability to petition for a writ of habeas corpus. Hill may petition the Supreme Court directly for a writ of habeas corpus under that Court's original jurisdiction. See Felker v. Turpin, 518 U.S. 651, 661-63, 116 S.Ct. 2333, 2338-39, 135 L.Ed.2d 827 (1996) (holding that AEDPA did not withdraw from the Supreme Court its original jurisdiction to consider petitions for writs of habeas corpus and leaving open the question whether AEDPA's restrictions apply to federal habeas petitions brought under the Supreme Court's original jurisdiction); In re Davis, 565 F.3d 810, 826-27 (11th Cir.2009) ("The Supreme Court has made clear that the habeas corpus statute, even after the AEDPA amendments of 1996, continues to allow it to grant a writ of habeas corpus filed pursuant to its original jurisdiction.”). Because Hill has an alternative avenue for habeas relief available to him, any argument that the writ has been suspended in his case would be a non-starter.

. In referring to "mental retardation” throughout this dissent, I recognize that increasingly professionals in this field, such as the American Association on Intellectual and *302 Developmental Disabilities (formerly the American Association on Mental Retardation), are replacing the term "mental retardation” with "intellectual disability” or "intellectual developmental disability.” In this dissent, however, I use the term “mental retardation” to maintain consistency with the terminology used throughout Hill’s appeal and relevant caselaw.
As I noted in my dissent in Hill v. Humphrey, 662 F.3d 1335, 1366-67 (11th Cir. 2011) (en banc) (Barkett, J., dissenting), "the Supreme Court recognized [in Atkins] that mental retardation spans a spectrum of intellectual impairment, ranging from mild to moderate to severe to' profound mental retardation,” and that "within the universe of all mentally retarded individuals, 89% fall in the mildly mentally retarded range.”