PER CURIAM.
The State has scheduled Warren Lee Hill, Jr.’s execution for Tuesday, January 27, 2015 at 7:00 p.m. On January 15, 2015, and pursuant to 28 U.S.C. § 2244(b), petitioner Hill filed this second, counseled application for permission to file a second or successive federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the district court. On January 16, 2015, the State filed a response opposing petitioner Hill’s successive application on numerous grounds. Because over the past 20 years petitioner Hill has filed four counseled state habeas cases and three counseled federal habeas cases, we first review just some of the lengthy factual and procedural background before discussing his current application.
I. PROCEDURAL HISTORY
A. Malice Murder Conviction and Unanimous Death Sentence
In 1990, while Hill was serving a life sentence for the murder of his girlfriend, he murdered another person in prison. Using a nail-studded board, Hill bludgeoned a fellow inmate to death in his bed. As his victim slept, “Hill removed a two-by-six board that served as a sink leg in the prison bathroom and forcefully beat the victim numerous times with the board about the head and chest as onlooking prisoners pleaded with him to stop.” Head v. Hill, 277 Ga. 255, 256, 587 S.E.2d 613, 618 (Ga.2003) (“Hill III”).[1] Hill “mocked the victim as he beat him.” Id.
A jury unanimously convicted Hill of malice murder and unanimously imposed a death sentence. The Georgia Supreme Court affirmed Hill’s conviction and death sentence. Hill v. State, 263 Ga. 37, 37, 427 S=.E.2d 770, 772 (Ga.1993) (“Hill I”). The U.S. Supreme Court denied Hill’s petition for certiorari. Hill v. Georgia, 510 U.S. 950, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993).
B. No Intellectual Disability Claim at Trial or on Direct Appeal
Hill’s current successive application centers on his allegation that he is intellectually disabled.[2] At the time of Hill’s 1991 trial, Georgia law prohibited executing intellectually disabled defendants.[3] Yet, at his trial and on direct appeal, Hill never claimed to be intellectually disabled. Indeed, Hill’s trial counsel had Hill evaluated by a clinical psychologist expert who found Hill was not intellectually disabled. Hill v. *1217 Humphrey, 662 F.3d 1335, 1340 (11th Cir.2011) (en banc), cert. denied, 566 U.S. -, 132 S.Ct. 2727, 183 L.Ed.2d 80 (2012).
In 1994, Hill filed his first, counseled state habeas case but did not claim he was intellectually disabled. It was only in 1996, or five years after his 1991 trial, that Hill claimed, for the first time, he was intellectually disabled. As explained in the procedural history below, over the course of nearly 20 years, Hill has fully litigated his intellectual disability claims in numerous proceedings in both state and federal court. Here are just a few examples of why his claims have been repeatedly denied.
C. 1996-2003 State Habeas Proceedings
After conducting an evidentiary hearing and after a remand by the Georgia Supreme Court, the state habeas court in 2002 determined that Hill’s evidence failed to prove he was intellectually disabled beyond a reasonable doubt as required by Georgia law to bar his execution. See O.C.G.A. § 17 — 7—131 (c)(3), (j). The state habeas court employed the definition of mental retardation in O.C.G.A. § 17-7-131(a)(3), which provides that “mentally retarded” means (1) having “significantly subaverage general intellectual functioning,” (2) “resulting in or associated with impairments in adaptive behavior,” (3) “which manifested during the developmental period.” Georgia’s definition essentially tracks the clinical definitions mentioned by the Supreme Court in Atkins v. Virginia, 536 U.S. 304, 308 n. 3, 122 S.Ct. 2242, 2245 n. 3, 153 L.Ed.2d 335 (2002). As explained later, Georgia’s definition does not have Florida’s strict IQ cut-off of 70 that was at issue in Hall v. Florida, 572 U.S. -, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014), and that precluded defendant Hall from presenting any adaptive-behavior or other evidence as to intellectual disability. See Hall, 572 U.S. at -, -, 134 S.Ct. at 1992, 1994. In this case, however, both Hill and the State presented evidence of his adaptive behavior and other evidence in various courts.
The state habeas court found Hill established the first prong of “significantly sub-average general intellectual functioning.” Hill III, 277 Ga. at 255, 587 S.E.2d at 617-18. The court did not find an exact IQ score, but multiple tests had placed Hill’s IQ score at between 69 and 77. In re Hill, 715 F.3d 284, 286 & n. 1 (11th Cir.2013) (collecting various IQ scores from tests administered at different times).
As to the second prong, however, the state habeas court found that Hill had not shown that he had “impairments in adaptive behavior” beyond a reasonable doubt. Hill III, 277 Ga. at 255, 587 S.E.2d at 618. Hill’s case has always been about his adaptive behavior, not his IQ scores. Based on the evidence presented by Hill and the State, the state habeas court found Hill did not have impairments in “communication, self-care, home living, social/interpersonal skills, use of community resources, self direction, functional academic skills, work, leisure, health, and safety.” Hill, 662 F.3d at 1341; In re Hill, 715 F.3d at 286. Specifically, “[t]he court noted Hill’s (1) extensive work history and ‘apparent ability to function well in such employment,’ (2) disciplined savings plans pursued to purchase cars and motorcycles, (3) military service, (4) active social life, (5) writing skills, and (6) ability to care for himself.” In re Hill, 715 F.3d at 286. Because Hill failed to establish the second prong, the state habeas court did not discuss the third prong, which is onset before age 18.
Among the evidence before the state habeas court was Hill’s military record, showing his five promotions, his successful courses in military education, instruction training and leadership management, and *1218 his excellent oral and written English language skills, as follows:
He entered the military at the rank E-l and, advancing each year, attained the rank of E-5 in five years. Hill was decorated as a .38 caliber sharpshooter. He received military education in nuclear weapons loading, aviation fund school, and corrosion control. He completed an 80-hour instructor training course. Hill also attended and completed a 2-week military course in leadership management education and training. He was qualified as an assistant supervisor and ordnance systems main-' tenance man and troubleshooter, with collateral duties in shop training, as a publications petty officer, as a nuclear conventional weapons load team member, and as a corrosion control/reclamation and salvage team member. Hill was qualified as a weapons technician and was a Human Relations council member. He completed a 2-week tour with a hometown recruiting program, played on the football team, and was Petty Officer of the Watch. Hill also functioned as an assistant work center supervisor, an ordnance troubleshooter, was CPR qualified, and played on an intramural basketball team.
Evaluations of Hill during his military duty contain these descriptions of him:
Dedicated and reliable petty officer. Completes all tasks expeditiously, at times under very adverse conditions. Quiet, friendly manner, and positive attitude greatly enhances squadron morale. Uniforms and appearance always outstanding. Actively supports the Navy’s equal opportunity goals. Good use of the English language orally and written. Strongly recommended for advancement and retention.
Similarly, Hill was reported to be:
[a] reliable individual and devoted second class petty officer. Works exceptionally well with others and assists in the training of weapons-loading team members. Implemented a new W/C tool control program and aided in the redesigning of the W/C technical Pubs library, both areas receiving an outstanding during the latest COMHEL WINGGRES visit. His quiet personality enhances squadron morale. Uniforms and appearance continually outstanding. Actively supports the Navy’s equal opportunity goals. Demonstrates excellent command of the English language orally and written. Strongly recommended for advancement and retention in the Naval service.
In re Hill, 715 F.3d at 286-87 (footnote omitted). Hill was eligible for an E-6 promotion in the military; however, he was demoted not because of any mental inability, but because he murdered his girlfriend. Id. at 286 n. 4.
These are just some examples of the plethora of evidence before the state habeas court and the Georgia Supreme Court. Ultimately, the state habeas court and then the Georgia Supreme Court in 2003 concluded that Hill had not shown the required impairments in adaptive behavior and thus had not established his intellectual disability beyond a reasonable doubt as required by Georgia law. Hill III, 277 Ga. at 260-63, 587 S.E.2d at 620-23. The Georgia Supreme Court also concluded in 2003 that Georgia’s beyond-a-reasonable-doubt standard was not unconstitutional under Atkins. Id. at 262, 587 S.E.2d at 622.
D. First Federal 28 U.S.C. § 2254 Petition — Filed October 5, 2004
Hill then filed a § 2254 petition asserting that he was “mentally retarded, and his execution would violate the Eighth and Fourteenth Amendments to the United *1219 States Constitution.” Under that heading, Hill raised subclaims, including arguments that Georgia’s beyond-a-reasonable-doubt standard violated the Eighth and Fourteenth Amendments and Atkins. In 2007, the district court denied Hill’s § 2254 petition, but issued a certificate of appealability on the question of whether the Georgia Supreme Court’s decision to uphold the beyond-a-reasonable-doubt standard was contrary to clearly established federal law as announced in Atkins. Hill, 662 F.3d at 1342-43.
In 2011, this Court en banc affirmed the district court’s ruling denying Hill’s § 2254 petition. Id. at 1360-61. The en banc Court explained, under AEDPA,[4] “our review of a final state habeas decision is greatly circumscribed and is highly deferential to the state courts.” Id. at 1343 (quotations omitted). “Under 28 U.S.C. § 2254(d)(1), as amended by AEDPA, a state prisoner cannot obtain federal, habeas relief unless he can show the decision of the state court ‘was contrary to, or involved an unreasonable application of, clearly established Federal law....’ ” Id. (quoting 28 U.S.C. § 2254(d)(1)). In short, “AEDPA precludes a federal court from imposing its will, invalidating that state statute as unconstitutional, and granting federal habeas relief in the absence of ‘clearly established’ federal law, which the United States Supreme Court admonishes is a holding of that Court.” Id. at 1360.
Based on the strict limitations on our federal review enacted by AEDPA, the en banc Court concluded that there was no federal law or U.S. Supreme Court holding clearly establishing that the “reasonable doubt burden of proof for claims of mental retardation violates the Eighth Amendment.” Id. As such, the en banc Court held that Hill had failed to show that the state courts’ rejection of his burden-of-proof claim involved an unreasonable application of clearly established federal law, as required under § 2254(d). Id. at 1360-61.[5]
The en banc Court emphasized that “[w]e do not hold, as one dissent charges, ‘that states have complete discretion to choose any procedures to govern the determination of mental retardation’” and that “[w]e decide only the issue before us, which concerns only the standard of proof, and we hold only that the Georgia Supreme Court’s decision in Hill III [holding the burden-of-proof statute was not unconstitutional] was not contrary to, and did not involve an unreasonable application of, Atkins.” Id. at 1352 n. 19. The en banc Court never said states have limitless authority or unfettered discretion to choose procedural rules. Rather, the en banc Court narrowly held only that Hill had not shown the Georgia Supreme Court decision was contrary to or an unreasonable application of clearly established federal law at the time of Hill’s case. Id. at 1347-61.
Petitioner Hill petitipned for a writ of certiorari on the alleged unconstitutionality of Georgia’s burden of proof as to intellectual disability claims, relying on the Eighth Amendment and Atkins. The U.S. Supreme Court thereafter denied his petition for writ of certiorari in June 2012. Hill v. Humphrey, 566 U.S. -, 132 S.Ct. 2727, 183 L.Ed.2d 80 (2012).
*1220 E. Second State Habeas Petition— Filed July 18, 2012
On July 18, 2012, the day of his first scheduled execution, Hill filed a second state habeas corpus petition, reasserting the same claim of intellectual disability and the same claim that Georgia’s burden-of-proof standard is unconstitutional. See In re Hill, 715 F.3d at 288. The state habeas court denied the claim, as did the Georgia Supreme Court on the ground that the claim was barred by res judicata. Id. The U.S. Supreme Court denied certiorari. Hill v. Humphrey, 568 U.S. -, 133 S.Ct. 1324, 185 L.Ed.2d 233 (2013).
F. Third State Habeas Petition — Filed February 15, 2013
Hill filed his third state habeas petition on February 15, 2013, four days before his rescheduled execution date on February 19, 2013. In re Hill, 715 F.3d at 288. This time, Hill asserted that certain mental health experts (who had initially evaluated him in 2000) had now altered in 2013 (13 years later) their prior 2000 conclusions about his mental capabilities (even though none of the experts had seen Hill since their 2000 evaluations). Id. at 288-89 (outlining the chronological history regarding these experts). On February 18, 2013, the state habeas court denied Hill’s petition, finding that it was proeedurally barred because it raised a claim that already had been asserted twice before. Id. at 289. The state court also concluded that Hill’s “new evidence” did not establish a miscarriage of justice that would allow him to overcome the procedural bar. Id. The Georgia Supreme Court denied Hill’s application for a certificate of probable cause. Id. The U.S. Supreme Court denied certiorari. Hill v. Humphrey, 571 U.S. -, 134 S.Ct. 115, 187 L.Ed.2d 84 (2013).
G. First Application to File Successive § 2254 Petition — Filed February 19, 2013
On February 19, 2013, just three hours before his third rescheduled execution, Hill filed in this Court his first application to file a second or successive § 2254 petition. In re Hill, 715 F.3d at 288. Hill argued that certain mental health experts’ 2013 recanting of their 2000 assessments was new evidence establishing that he was intellectually disabled and his execution would violate the Eighth Amendment and Atkins. See id. at 289-90, 292. This Court denied Hill’s application, stating first that § 2244(b)(1) barred him from raising his proposed claim because he already had raised it in his original § 2254 petition in 2004. Id. at 291.
Alternatively, this Court determined that Hill had failed to make a prima facie showing under § 2244(b)(2)(B) because his new evidence related to his innocence of the death penalty instead of his innocence “of the underlying offense.” Id. at 295-97, 299. Lastly, this Court concluded that the pre-AEDPA “actual innocence of sentence” exception to filing a successive habeas petition from Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), did not survive the AEDPA. In re Hill, 715 F.3d at 299-301. Accordingly, because no grounds existed to allow Hill to file a second or successive § 2254 petition, this Court denied his application. Id. at 301.
H. Original Proceeding in the U.S. Supreme Court — Filed May 22, 2013
In May 2013, Hill filed an original petition for a writ of habeas corpus in the Supreme Court. In his petition, Hill cites Sawyer v. Whitley multiple times, claiming the Supreme Court should not allow AED-PA’s restrictions in § 2244(b)(2) to bar a successive petition and habeas relief but *1221 should accept the original petition and grant habeas relief, among other reasons, based on the miscarriage-of-justiee principle in Sawyer and Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Hill also argued as his underlying claim that Georgia’s burden of proof was unconstitutional under Atkins.
The U.S. Supreme Court denied Hill’s original habeas petition in October 2013. In re Hill, 571 U.S. -, 134 S.Ct. 118, 187 L.Ed.2d 265 (2013).
I. Supreme Court’s Decision in Hall v. Florida — Issued May 27, 2014
On May 27, 2014, in Hall v. Florida, the Supreme Court held that a State cannot execute a person whose IQ test score falls within the test’s margin of error unless he has been able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits. 572 U.S. at-, 134 S.Ct. at 2001. The Florida Supreme Court interpreted Fla. Stat. § 921.137 to provide that a prisoner sentenced to death was required to show an IQ test score of 70 or below before presenting any additional evidence of his intellectual disability. See Hall v. State, 109 So.3d 704, 707-08 (Fla.2012); Cherry v. State, 959 So.2d 702, 712-13 (Fla.2007). But Florida’s strict IQ score cut-off of 70 failed to take into account the standard error of the test. In Hall, the Supreme Court struck down Florida’s strict cut-off of 70 as violating the Eighth Amendment’s prohibition on cruel and unusual punishment on the ground that the rule “misuse[d] IQ score on its own terms” in a way that risked the execution of those with intellectual disabilities. 572 U.S. at -, 134 S.Ct. at 2001.
Specifically, the Supreme Court in Hall noted evidence of accepted medical practice that (1) an IQ test result, without reference to other evidence, was not conclusive evidence of intellectual capacity; and (2) each IQ test had a standard error of measurement, such that a score of 71 generally is considered to demonstrate, with 95 percent confidence, that the test-taker’s IQ was between 66 and 76. Id. at -, 134 S.Ct. at 1995-96.
J. Fourth State Habeas Petition Based on Hall — Filed August 29, 2014
After the Supreme Court’s decision in Hall, petitioner Hill returned to the Georgia state courts. Hill filed his fourth state petition for habeas corpus. In his fourth state petition, Hill again argued that Georgia’s beyond-a-reasonable-doubt standard was unconstitutional but this time Hill based his claims on both Hall and Atkins. The state habeas court dismissed his fourth petition as procedurally barred. On January 20, 2015, the Georgia Supreme Court denied a certificate of probable cause and also denied a stay of execution.
II. DISCUSSION
In the instant federal successive application, petitioner Hill seeks to raise a claim in a successive § 2254 petition that he is innocent of the death penalty and ineligible for execution because of the Supreme Court’s decision in Hall v. Florida. For starters, Georgia’s statute is nothing like the Florida statute in Hall v. Florida, and Hill’s case is nothing like Hall’s. Rather, the Georgia statute fully allowed adaptive-behavior evidence, and Hill had an evidentiary hearing and presented adaptive-behavior evidence in state courts, as did the State.
In any event, to obtain permission to file a successive § 2254 petition, Hill must meet the requirements of 28 U.S.C. § 2244(b). We outline those requirements.
*1222 A. Requirements of 28 U.S.C. § 2244(b)
Section 2244(b)(1) of Title 28 provides that “[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior-application shall be dismissed.” 28 U.S.C. § 2244(b)(1). Accordingly, in ruling on an application to file a successive petition, we-must make a threshold determination of whether the claim to be presented in the second or successive petition was presented in the first petition. In re Hill, 715 F.3d at 291.
Further, even where a claim was not presented in a prior federal petition, the claim must satisfy the requirements of 28 U.S.C. § 2244(b)(2). Under that provision, we may grant the district court authorization to consider a second or successive habeas petition only if:
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
28 U.S.C. § 2244(b)(2). “The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.” Id. § 2244(b)(3)(C).
For the reasons explained below, we must conclude that Hill has failed to meet the requirements of § 2244(b) with his proposed intellectual disability claim based on Hall v. Florida.
B. Hill’s Intellectual Disability Claim is Not a “New” Claim for § 2244(b) Purposes
As a threshold matter, petitioner Hill is barred from raising his proposed intellectual disability claim by § 2244(b)(1). In his first § 2254 petition back in 2004, Hill raised his intellectual disability claim based on the Eighth Amendment. In re Hill, 715 F.3d at 287. In support of this argument, Hill’s prior § 2254 petition raised numerous sub-claims, one of which specifically asserted that Georgia’s beyond-a-reasonable-doubt standard was contrary to the Supreme Court’s ruling in Atkins. Thus, the “the basic thrust or gravamen of [Hill’s] legal argument” in his original § 2254 petition was that his death-penalty sentence violated the Eighth and Fourteenth Amendments as set forth in Atkins. See id. at 294 (quotation omitted). Hill’s first federal habeas petition qualifies as a “prior application” for the purposes of § 2244(b)(1). Id. at 291.
Further, in the instant application, petitioner Hill again argues that his execution would violate the Eighth and Fourteenth Amendments, and the only difference from his previously asserted claim is that he is now relying on the Supreme Court’s subsequent decision in Hall to support his challenge to Georgia’s burden of proof. Accordingly, Hill’s purportedly new claim is the same claim that he raised in his original § 2254 petition, albeit supported by a new legal argument. See id. at 292. As we noted in In re Hill, “new legal arguments in support of a prior claim are insufficient to create a new claim and avoid § 2244(b)(l)’s bar on successive petitions.” Id. at 293. Hill cannot convert his previously asserted claim into a new claim merely by coming forward with new legal *1223 arguments. Id. at 292. Again, Hill’s core claim has remained exactly the same since his first state habeas petition — his execution would violate the Eighth and Fourteenth Amendments, as guaranteed in Atkins. Id. at 285, 287-89, 291-92, 294. Therefore, Hill’s current proposed claim is barred by § 2244(b)(1). See 28 U.S.C. § 2244(b)(1).
C. Hall v. Florida Is Not Retroactive
Even assuming that petitioner Hill’s proposed claim were not barred by § 2244(b)(1), our binding panel precedent, In re Henry, forecloses his argument that Hall applies retroactively on collateral review and entitles him to file a second or successive habeas petition. In re Henry, 757 F.3d 1151 (11th Cir.2014).
In In re Henry, the petitioner filed a successive application based on the proposed claim that, under Hall, his execution would violate the Constitution because' he allegedly was intellectual disabled. Id. at 1153-54. This Court held, as an initial matter, that Hall did announce a new rule of law within the meaning of § 2244(b)(2)(A). Id. at 1158-59.
This Court further held, however, that “the Supreme Court has not made the new rule announced in Hall retroactive to cases on collateral review.” Id. at 1159. This Court first reasoned that the Supreme Court had not explicitly made Hall retroactively applicable to cases on collateral review. Id. We further noted that “[t]he Supreme Court has never held that a rule requiring procedural protections for prisoners with IQ scores within the test’s standard of error would be retroactive,” id. at 1161, and thus that no combination of “ ‘multiple holdings ... logically dictate[s] the retroactivity of the new rule.’ ” Id. at 1159-60 (quoting Tyler v. Cain, 533 U.S. 656, 668, 121 S.Ct. 2478, 2485, 150 L.Ed.2d 632 (2001) (O’Connor, J., concurring)). We also observed that the principle announced in Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) — “that any rule placing a class of individuals beyond the state’s power to execute is retroactive” — did not make Hall retroactive because “Hall merely provides new procedures for ensuring that States do not execute members of an already protected group.” In re Henry, 757 F.3d at 1161. Thus, this Court concluded that-a claim based on Hall v. Florida “cannot meet the requirements set by Congress [in § 2244(b)(2)(A)].” Id. at 1159.
This panel is bound by In re Henry, and therefore, we must reject petitioner Hill’s attempt to rely on Hall v. Florida to bring a claim in a second or successive habeas petition based on “a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.” 28 U.S.C. § 2244(b)(2)(A).
We similarly reject petitioner Hill’s argument that we should not give binding precedential effect to a prior panel decision in the context of applications to file second or successive habeas petitions. This Court recently held, in In re Lambrix, that “a prior panel’s holding in a published three-judge order issued under § 2244(b) ‘is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc.’ ” 776 F.3d 789, 794, 2015 WL 167685, at *4 (11th Cir. Jan. 14, 2015) (quoting United States v. Archer, 531 F.3d 1347, 1352 (11th Cir.2008)). Thus, under In re Lambrix, this panel is bound by In re Henry’s holding that “the Supreme Court has not made the new rule announced in Hall retroactive to cases on collateral review.” In re Henry, 757 F.3d at 1159. Accordingly, Hill’s proposed intellectual disability claim based on Hall v. *1224 Florida cannot meet the requirements of § 2244(b)(2)(A):
D. Even If Hall v. Florida Were Retroactive, Hall v. Florida Is Materially Different from this Case
Even assuming that the new rule announced in Hall is somehow made retroactive on collateral review, this Court alternatively must deny petitioner Hill’s application on the ground that Hall and its consideration of Florida’s strict IQ cut-off of 70 (that barred presenting any other evidence) are materially different from the issue in this case concerning Georgia’s beyond-a-reasonable-doubt standard for capital intellectual disability claims.
Hall involved the very specific facts of Florida’s interpretation of its definition of intellectual disability. The U.S. Supreme Court in Hall explicitly stated that Florida’s “strict IQ test score cutoff of 70 is the issue,” and that in Florida, “[i]f, from test scores, a prisoner is deemed to have an IQ above 70, all further exploration of intellectual disability is foreclosed.” Hall, 572 U.S. -, -, 134 S.Ct. at 1990, 1994. Hall was about a strict IQ of 70 cut-off for the substantive definition of intellectual disability. In contrast, in this case, Georgia’s definition of intellectual disability is consistent with both Atkins and Hall. This case is not about Georgia’s definition of intellectual disability but about the trial procedure of burden of proof.
Put simply, Hill cannot make a prima facie showing, pursuant to § 2244(b)(3)(C), that his application based on Hall satisfies the requirements of § 2244(b), which requires “a sufficient showing of possible merit to warrant a fuller exploration by the district court.” In re Holladay, 331 F.3d 1169, 1173 (11th Cir.2003) (quotation omitted).
Furthermore, the new rule announced in Hall — that a State cannot execute a person whose IQ test score falls within the test’s margin of error unless he has been able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits' — simply has no bearing on Hill’s claim in this case. As noted above, Georgia’s test for intellectual disability does not use a strict IQ cut-off as the one iñ Hall did. Rather, Georgia law allows the consideration of evidence regarding impairments in adaptive functioning. See O.C.G.A. § 17-7131(c)(3); Hill, 662 F.3d at 1353. Hill presented IQ, adaptive-behavior, and other evidence. Hall thus does not help Hill even if Hall were retroactive.
Nor, more importantly, can Hall be applied broadly to undermine Georgia’s reasonable doubt standard for intellectual disability claims. Hill argues that Georgia’s reasonable doubt standard offends Hall because the reasonable doubt standard denies defendants like Hill a fair opportunity to show that the Constitution prohibits their execution. Contrary to Hill’s argument, while Hall concerned a state law that had a strict IQ of 70 cut-off that prevented a capital defendant from presenting evidence of his intellectual disability, Hall, 572 U.S. at -, 134 S.Ct. at 2001, Georgia’s reasonable doubt standard has not in any way prevented Hill from presenting adaptive-behavior evidence, or any other evidence, to support his claim of intellectual disability. Hill presented such evidence at multiple times, as did the State. As this Court noted previously, “[i]t is undisputed that Georgia’s statutory definition of mental retardation is consistent with the clinical definitions cited in Atkins. ... [T]his is not a case about the categorical exclusion of the mildly mentally retarded or any other group from the Atkins prohibition. Instead, it is about Georgia’s procedure for determining who is mentally retarded.... ” Hill, 662 F.3d at 1352.
*1225 Hill further argues that the reasonable doubt standard creates an unacceptable risk of executing a person who suffers from a disability. But this argument is essentially identical to one this Court has already rejected in our en banc decision in Hill, cf. Hill, 662 F.3d at 1354-56, and this panel is now bound by that decision.
E. To the Extent that Hill Brings a Claim under § 2244(b)(2)(B), His Pure Sentencing Claim Does Not Meet the Requirements of that Provision and His Sawyer Argument Is Barred
In the present application, petitioner Hill repeatedly contends that he is “actually innocent of the death penalty” because of his intellectual disability, and that Sawyer, 505 U.S. 333, 112 S.Ct. 2514, provides such an equitable exception to the restriction on second or successive § 2254 petitions. As an initial matter, to the extent that Hill is proposing a claim under § 2244(b)(2)(B), even assuming that he had newly discovered evidence of his intellectual disability, his claim of actual innocence of his death sentence is not a showing that “no reasonable factfinder would have found [him] guilty of the underlying offense.” 28 U.S.C. § 2244(b)(2)(B)(ii) (emphasis added). Indeed, Hill’s attempt to raise such a claim is foreclosed both by the law-of-the-case doctrine and the prior-panel-precedent rule, as we held in In re Hill that “federal law does not authorize the filing of a successive application under § 2244(b)(2)(B) based on a sentencing claim even in death cases.” In re Hill, 715 F.3d at 297.
Moreover, Hill’s argument that Sawyer provides an equitable exception to the restriction on successive § 2254 petitions is similarly foreclosed. This Court held in both In re Hill and Gilbert v. United States, 640 F.3d 1293 (11th Cir.2011) (en banc), that the Sawyer actual-innocence-of-the-death-penalty exception did not survive the AEDPA. In re Hill, 715 F.3d at 299-301; Gilbert, 640 F.3d at 1322. Thus, Hill’s attempt to rely on Sawyer to avoid complying with § 2244(b)’s statutory requirements is foreclosed both by the law of the case and prior panel precedent. Lambrix, 776 F.3d at 793-95, 2015 WL 167685, at *3-4.
F. Request to Certify
We recognize that, on the eve of his fourth rescheduled execution, petitioner Hill has filed a request that this Court now certify several issues to the U.S. Supreme Court under 28 U.S.C. § 1254(2). The AEDPA states that “[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.” 28 U.S.C. § 2244(b)(3)(E). We need not decide whether the § 1254(2) certification avenue may be available because, in any event, we decline to certify for several reasons.
The Supreme Court has discouraged the use of this certification procedure and has accepted certified questions only four times in the last 60 years. See Iran Nat’l Airlines Corp. v. Marschalk Co., 453 U.S. 919, 101 S.Ct. 3154, 69 L.Ed.2d 1002 (1981); Moody v. Albemarle Paper Co., 417 U.S. 622, 94 S.Ct. 2513, 41 L.Ed.2d 358 (1974); United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964); United States v. Rice, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982 (1946). The Supreme Court has admonished that the certification procedure is proper only in “rare instances.” See Wisniewski v. United States, 353 U.S. 901, 902, 77 S.Ct. 633, 634, 1 L.Ed.2d 658 (1957). We have located no court of appeals that has ever certified a question arising from proceedings on an application to file a successive § 2254 petition.
*1226 Additionally, Hill’s questions, which he wishes the Supreme Court to resolve because he disagrees with this Court’s prior panel decisions, would be inappropriate questions for certification. Further, as explained above, even if Hall were retroactively applied, it would not help Hill because Hall involved the substantive definition of intellectual disability and did not involve the burden of proof. We disagree with the dissent’s description of Hall as “a paradigm shift” and a “revolutionary thing.” Infra, at 1227, 1230-31 (Dissenting opinion of Martin, J.). As outlined above, Hall narrowly invalidated Florida’s strict IQ cut-off of 70 that, as applied in Hall’s case, wholly precluded defendant Hall from presenting adaptive-behavior and any' other evidence. There is nothing paradigmatic or revolutionary about Hall.
In the face of multiple and insurmountable procedural hurdles erected by AED-PA — including that the instant habeas claim is exactly the same as the one we have already rejected, that Hall v. Florida has not been made retroactive to cases on collateral review by the Supreme Court, that even if Hall were retroactive, it could not help this petitioner, and finally that there has been no showing that Hill is not guilty of the “underlying offense” — we decline to certify.[6]
III. CONCLUSION
Accordingly, on the eve of Hill’s fourth rescheduled execution, and for all of these reasons, and pursuant to § 2244(b), we DENY Hill’s January 15, 2015 application for leave to file a successive § 2254 petition for writ of habeas corpus and DENY Hill’s request to certify questions to the U.S. Supreme Court.

. We have numbered Hill's state cases in their chronological order.

. This order employs the terms "intellectually disabled” and "intellectual disability” because, as the Supreme Court stated in Hall v. Florida, both law and medicine have moved away from the terms "mental retardation” and "mentally retarded.” 572 U.S. -, -, 134 S.Ct. 1986, 1990, 188 L.Ed.2d 1007 (2014). Thus, while in the past Hill’s pleadings used the term "mentally retarded,” he now uses the term "intellectually disabled,” and we do too in addressing his claim.

.In 1988, Georgia became the first state in the nation to abolish the execution of intellectually disabled persons. See O.C.G.A. § 17-7-131(c)(3), (j). The national consensus against executing the intellectually disabled that gave birth to the Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), prohibition in 2002 was a consensus that Georgia started by enacting the very same statute — § 17-7-131(c)(3), (j) — that petitioner Hill now claims violates Atkins and Hall. See Atkins, 536 U.S. at 313-14, 122 S.Ct. at 2248.

. Antiterrorism and Effective Death Penalty Act of 1996, codified in relevant part in 28 U.S.C. § 2254.

. While petitioner Hill focuses on solely the reasonable doubt standard in isolation, the en banc Court reviewed in great detail the many procedural protections afforded under Georgia’s statute and processes for a defendant asserting an intellectual disability claim. Hill, 662 F.3d at 1352-53.

. In addition, in many of Georgia’s post-Afkins death penalty cases, the U.S. Supreme Court denied capital defendants’ certiorari petitions that made the same constitutional reasonable doubt challenge that Hill makes here. See Hill, 662 F.3d at 1348 n. 14 (collecting some of the Georgia cases, including direct appeals). Thus, another avenue (certiorari petition on direct appeal) exists to present the constitutional issue here in a way that is not .constrained by AEDPA deference in first § 2254 petitions (the requirement of clearly established federal law as shown by a U.S. Supreme Court holding) and the other procedural bars applicable to applications for successive § 2254 petitions, such as this one.