[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13371-P
_____

IN RE: PAUL GLEN EVERETT,

Petitioner.

_____

Application for Leave to File a Second or Successive
Habeas Corpus Petition, 28 U.S.C. § 2244(b)
_____

Before HULL, WILLIAM PRYOR and JULIE CARNES, Circuit Judges.

B Y  T H E  P A N E L:

Pursuant to 28 U.S.C. § 2244(b)(3)(A), Paul Glen Everett has filed pro se an application

seeking an order authorizing the district court to consider a second or successive petition for a

writ of habeas corpus.  Everett wishes to raise three claims: (1) he is actually innocent of sexual

battery and first-degree murder; (2) his trial counsel was ineffective; and (3) his confession was

made under duress.  For the reasons below, we deny Everett's application for leave to file a

second or successive habeas petition.  We also deny as moot Everett's request for appointment of

counsel.

We first review the factual and procedural background of this case in order to place the

proposed "new" claims in context.

## I.  BACKGROUND

A.    **Murder, Burglary, and Sexual Battery**

In our opinion affirming the denial of Everett's initial § 2254 petition, we set forth the following relevant facts.  During the late afternoon or early evening of November 2, 2001, Everett entered the home of Kelli Bailey, who lived in Panama City Beach, Florida.  Everett v. Sec'y, Fla. Dep't of Corr., 779 F.3d 1212, 1218 (11th Cir. 2015) ("Everett I").  At the time, he was carrying a wooden fish bat.  Id.  When Bailey confronted Everett, Everett beat Bailey, raped her, and twisted her neck, causing her to break a vertebra and suffocate to death.  Id.  After police responded to the scene and discovered Bailey's body, they recovered a fish bat, which tested positive for the presumptive presence of blood, from near her house.  Id. at 1219.

B.    **Everett's Arrest and Statements to Police**

At the time of the murder, Everett was a fugitive, having failed to turn himself in to begin serving a sentence for an unrelated conviction in Alabama.  Id.  On the evening of November 2, 2001, a bail bondsman found Everett at a Florida motel and took him into custody.  Id.  Everett was transported to Alabama and jailed.  Id.

On November 14, 2001, Sergeant Rodney Tilley and Lieutenant Chad Lindsey, investigators for the Panama City Beach Police Department, traveled to the Alabama jail in which Everett was housed and interviewed him.  Id.  During the recorded, 12-minute interview, Everett stated that he had gone to Panama City to meet a friend, Jared Farmer.  Id.  He paid for the trip in part by writing bad checks.  Id.  He used one of the bad checks at a Walmart to buy a fish bat, among other things.  Id.  When asked which shoes he had worn during the trip, Everett replied that he wore a pair of sneakers, which he had since thrown away because they got blood on them during a fight with another man.  Id. at 1220.  After Sergeant Tilley noted that Everett's

2

account of throwing away the shoes did not "jive," Everett said that he wanted a lawyer. Id. One of the officers then turned off the tape recorder. Id.

While the officers were leaving the room, Lieutenant Lindsey said something to the effect of "[d]on't be lying, don't be caught in a lie, you know, now's the chance for you to tell the truth, you know, because I don't want to see the State of Florida stick a needle in your arm." Id. Sergeant Tilley commented that he thought that the murder "might have been a burglary that went bad" and said that he "would sure like to hear it from [Everett]." Id.

On November 19, 2001, at Sergeant Tilley's request, Officer John Murphy, an Alabama detective, asked for Everett's consent to the collection of DNA samples in connection with the Bailey case. Id. After Everett consented and provided the samples, he told Officer Murphy that he would like to provide additional information. Id. at 1220-21. During the subsequent tape-recorded interview, Officer Murphy advised Everett of his Miranda[1] rights, and Everett confirmed that he understood his rights and that he was willing to speak with Officer Murphy. Id. at 1221. Everett said that, while he was in Panama City, he and an acquaintance, Fred "Bubba" Wilson, visited Wilson's friend, "Angel." Id.[2] After Bubba left and returned to find Everett and Angel partially undressed, Bubba became enraged and started beating Angel. Id. Everett fled and later threw his shoes and shorts away after discovering blood on them from when Bubba punched Angel. Id. at 1221-22.

On November 27, 2001, when Sergeant Tilley returned to the Alabama jail to serve an arrest warrant on Everett for victim Bailey's murder, Everett indicated that he wanted to talk to

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[2] Police never identified any connection between Fred "Bubba" Wilson and victim Bailey. The name "Angel" was given by Everett for the person Everett claims was in the house with Bubba.

3

Sergeant Tilley. Id. at 1222. At the beginning of the recorded interview, Everett acknowledged that he previously had requested an attorney, but later had asked to speak to Sergeant Tilley without a lawyer. Id. Everett then confessed to beating and raping Bailey. Id. Although Everett denied knowing that Bailey had died, he admitted to twisting Bailey's neck. Id.

## C.    Jury Trial and Direct Appeal

At Everett's November 2002 jury trial, the State presented overwhelming evidence of his guilt. Id. at 1224. In particular, a DNA expert testified that the DNA from victim Bailey's vaginal swabs matched Everett's DNA on all thirteen genetic markers tested. Id. The DNA expert further testified that the "frequency occurrence" of someone having Everett's DNA profile was one in 15.1 quadrillion of the Caucasian population, 1.01 quintillion of the African-American population, and 11.2 quadrillion of the Hispanic population. Id. A Walmart surveillance camera videotape of Everett purchasing a fish bat, like the one recovered near the crime scene, was played for the jury. Id. Finally, the tape recording of Everett's November 27, 2001 confession was admitted into evidence and played for the jury. Id. at 1224-25.

The jury convicted Everett of first-degree murder, burglary of a dwelling with a battery, and sexual battery involving serious physical force. Id. at 1223, 1225. After the jury unanimously recommended a death sentence, the state trial court held a Spencer[3] hearing and sentenced Everett to death. Id. at 1225, 1230. Everett appealed to the Florida Supreme Court, which affirmed his murder conviction and death sentence. Everett v. State, 893 So. 2d 1278,

---

[3] Spencer v. State, 615 So. 2d 688, 690-91 (Fla. 1993) (providing that, after a jury has recommended a sentence but before the trial court imposes a sentence, the court should hold a hearing to afford all parties an opportunity to be heard, allow the presentation of additional evidence, and allow both sides to comment on or rebut information in any presentence or medical report).

1288 (Fla. 2004). The U.S. Supreme Court denied certiorari. Everett v. Florida, 544 U.S. 987, 125 S. Ct. 1865 (2005).

## D.    State Post-Conviction Proceedings

In 2006, Everett filed a motion to vacate his first-degree murder conviction and death sentence, pursuant to Florida Rule of Criminal Procedure 3.851. Everett v. State, 54 So. 3d 464, 469-70 (Fla. 2010). After granting an evidentiary hearing on Everett's ineffective-assistance-of-counsel claims, the state 3.851 court denied his motion. Id. at 470-71. Everett appealed to the Florida Supreme Court and also filed a state habeas petition. Id. at 471. The Florida Supreme Court denied his state habeas petition and affirmed the denial of his Rule 3.851 motion. Id. at 488.

## E.    Initial 28 U.S.C. § 2254 Proceedings

In 2011, Everett, through counsel, filed an amended § 2254 petition. In relevant part, Everett raised the following claims: (1) his DNA samples and November 27 confession were improperly admitted because police initiated contact after he invoked his right to counsel, in violation of his Fifth Amendment rights; (2) his trial counsel was ineffective at the guilt stage of the trial; (3) his post-conviction counsel was ineffective during his state post-conviction proceedings; and (4) his trial counsel was ineffective at the penalty stage of the trial.

In his first claim, Everett alleged that police interrogated him twice after he invoked his right to counsel, and neither interrogation took place at his suggestion or request. He challenged the admissibility of his DNA samples and confession prior to trial, and the State did not meet its burden of demonstrating that he knowingly and intelligently waived his right to counsel.

Everett also argued that his trial counsel, Walter Smith, provided ineffective assistance at the guilt stage of the trial by: (1) failing to present testimony—during a hearing on Everett's

5

motion to suppress his confession—that police initiated contact with Everett after he invoked his right to counsel; (2) "effectively waiv[ing]" his objection to a crime scene analyst's testimony, thereby "permitt[ing] the unqualified expert to offer blood spatter opinions"; and (3) presenting only one defense witness during trial and focusing on the issue of voluntary intoxication, which had been abolished as a defense in Florida by the time that Everett went to trial.

Everett further contended that his state post-conviction counsel failed to present "critical evidence" in support of Everett's claim in his Rule 3.851 motion that trial counsel Smith performed deficiently in litigating the motion to suppress Everett's pretrial statements to the police.

Finally, Everett argued that Smith provided ineffective assistance at the penalty stage by failing to conduct a reasonable investigation into potential mitigating evidence. Everett claimed that Smith delegated the task of finding mitigating evidence to Everett's alcoholic father, who died a few months before Everett's trial. After Everett's father died, "no one was left to assist Smith, and apparently he did nothing to resolve the dilemma." Smith did not consult a mental health expert to evaluate Everett for purposes of discovering potential mitigating evidence. Likewise, he did not ask Everett about drugs or present evidence that Everett had a history of drug use and had used cocaine and methamphetamine within hours of the murder. While he spoke with some of Everett's family members, he did not ask many questions about Everett's background.

In March 2014, the district court denied Everett's § 2254 petition, but granted a certificate of appealability ("COA") as to his first claim. Everett I, 779 F.3d at 1218, 1238. The COA was subsequently expanded to include the issue of "[w]hether the district court erred in denying Everett's claim that his trial counsel rendered ineffective assistance in the investigation

6

and presentation of mitigating evidence during the penalty phase of his 2002 trial." Id. at 1218.

On February 27, 2015, we affirmed the denial of Everett's § 2254 petition. Id. at 1254.

## II.  REQUIREMENTS OF 28 U.S.C. § 2244(b)

Under § 2244(b)(1)'s threshold requirement, "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."  28 U.S.C. § 2244(b)(1).  A prisoner's original § 2254 petition is a "prior application" for purposes of § 2244(b)(1).  In re Hill, 715 F.3d 284, 291 (11th Cir. 2013).  A "claim" is "an asserted federal basis for relief from a state court's judgment of conviction." Gonzalez v. Crosby, 545 U.S. 524, 530, 125 S. Ct. 2641, 2647 (2005).  New supporting evidence and new legal arguments in support of a prior claim are insufficient to create a new claim.  Hill, 715 F.3d at 293.  The claim remains the same so long as "[t]he basic thrust or gravamen of [the applicant's] legal argument is the same."  Id. at 294 (quotation omitted).

Further, even where a claim was not presented in a prior federal petition, the claim must satisfy the provisions of § 2244(b)(2).  Under that provision, we may grant the district court authorization to consider a second or successive habeas petition only if:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

An applicant may obtain permission to file a second or successive § 2254 petition based upon a new rule of constitutional law only if that rule was previously unavailable and has been made retroactive to cases on collateral review by the Supreme Court.  28 U.S.C. § 2244(b)(2)(A). If the new rule was announced while the original § 2254 petition was pending, the applicant must demonstrate that it was not feasible to amend his or her pending petition to include the new claim.  In re Hill, 113 F.3d 181, 182-84 (11th Cir. 1997).

An applicant seeking permission to file a second or successive § 2254 petition based on newly discovered facts must show, first, that the facts at issue would not have been uncovered through a reasonable investigation undertaken before the initial § 2254 petition was litigated.  In re Boshears, 110 F.3d 1538, 1540 (11th Cir. 1997).  Second, he must allege newly discovered facts that, when taken as true, establish a constitutional error.  Id. at 1541.  Finally, we evaluate these facts in light of the evidence as a whole to determine whether, had the applicant known these facts at the time of his trial, the application "clearly proves that the applicant could not have been convicted."  Id.  Thus, we will deny the application if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (quotation omitted).

"The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection."  28 U.S.C. § 2244(b)(3)(C).

### III.  CLAIMS IN EVERETT'S SUCCESSIVE APPLICATION

In his pro se successive application, Everett indicates that he wishes to raise three claims in a second or successive 28 U.S.C. § 2254 petition: (1) he is actually innocent of sexual battery and first-degree murder; (2) his trial counsel was ineffective; and (3) his confession was made

8

under duress.  He does not indicate whether his claims rely on newly discovered facts or new rules of constitutional law.  He requests that we appoint him counsel in order to assist him in developing facts to support his actual-innocence claims.  We address these proposed claims in turn.

## A.     Actual Innocence

In his successive application, Everett first alleges that he is actually innocent of sexual battery because "there was no sexual battery perpetrated against" Bailey.  Although Everett concedes that his DNA was found inside Bailey, he contends that this was because they had consensual sex on November 1, the day before her murder.  He asserts that the medical examiner's findings in the autopsy report were "clearly indicative of" consensual sex, and, after conducting the autopsy, the medical examiner verbally reported that she had not found any evidence of non-consensual sex.

Everett also argues that he is actually innocent of murdering Bailey because she was killed by his friend Jared Farmer.  Everett contends that transcripts of interviews conducted by police demonstrate that Farmer told two people of the "precise manner" in which Bailey was killed before the details became public knowledge.  Everett states that a police document also shows that a woman called the police with a tip three days after the murder, and the police failed to investigate.  Everett argues that Farmer threatened and harassed his family and used various "diversionary tactics" to "orchestrate the direction of the investigation."  Farmer also acted in a deceitful manner toward the police.  Finally, Everett contends that Farmer has attacked and threatened other women, and is a person of interest in three cold case murders.

In support of his arguments, Everett cites to the following exhibits, submitted in connection with the instant successive application: (1) an autopsy report, dated November 3,

9

2001, and signed by the medical examiner on December 19, 2001; (2) an undated document that appears to be an informal police report, in which the officer noted that, on November 20, 2001, the medical examiner stated that "she did not find any evidence of non-consensual sex," though she did discover a scratch and "was unable to determine if the scratch was pre-mortem or post-mortem resulting from sexual trauma"; (3) the medical examiner's June 10, 2002, deposition; (4) the medical examiner's trial testimony; (5) transcripts of five police interviews, which took place between November 13, 2001, and November 20, 2001; (6) a "Lead Sheet," dated November 5, 2001, in which an officer noted that a woman called and stated that "a school mate, John, was told by Travis that his friend, who's [sic] name starts with an N killed [victim Bailey]"; (7) a letter dated July 13, 2015, from Cindy McKaig, Everett's sister; (8) a letter dated April 16, 2011, from Jeremy Morgan, Everett's stepbrother; (9) a letter dated July 14, 2014, from Vicki Craycraft, Everett's sister; and (10) a letter dated February 18, 2015, from Craycraft.

Here, Everett has not made a prima facie showing that he meets the requirements of § 2244(b)(2) with respect to his actual-innocence claims. See 28 U.S.C. § 2244(b)(3)(C). As an initial matter, Everett does not allege that he recently discovered any of the facts upon which his actual-innocence claims are predicated, nor does he explain when he obtained any of the documents that he submitted as exhibits. Indeed, Everett's theory that Farmer killed Bailey is not new, as in 2002 Everett fabricated multiple explanations of Bailey's death for trial counsel Smith, including at least one story that implicated Farmer. Everett I, 779 F.3d at 1225-26. Trial counsel Smith even attempted—unsuccessfully—to verify Everett's claim that Farmer was involved in victim Bailey's death. See id. at 1227. Notably, the police excluded Farmer as a potential DNA contributor to the DNA sample found on Bailey's vaginal swabs. Id. at 1224 n.5.

10

In any event, even liberally construing Everett's application to argue that the attached documents described above are newly discovered evidence upon which his claims rely, Everett fails to show that his actual-innocence claims meet the requirements of § 2244(b)(2)(B).

Other than the letters from Everett's family members, all of the documents appear to have been created in 2001 or 2002. Even if Everett obtained all of the 2001 and 2002 documents after the conclusion of his first § 2254 proceedings, however, Everett does not allege, much less demonstrate, that those documents could not have been discovered earlier through a reasonable investigation. See Boshears, 110 F.3d at 1540.

The remaining documents—the letters from Everett's family—tend to corroborate Everett's allegations that Farmer threatened and harassed his family following the murder, and that someone told Everett's sister that Farmer had threatened and attacked women. The February 18 letter from Craycraft also indicates that Farmer was arrested twice in 2013. Even accepting the statements in the letters as true, Farmer's arrest history and behavior toward Everett's family have no bearing on whether Everett is factually innocent because they do not demonstrate by clear and convincing evidence that Everett did not rape and murder Bailey. See 28 U.S.C. § 2244(b)(2)(B)(ii).

Additionally, Everett does not allege, nor does the record suggest, that the State failed to disclose the facts reflected in the letters, or otherwise suppressed any potential trial testimony by those family members, in violation of Everett's constitutional rights. Under the plain language of the statute, § 2244(b)(2)(B)(ii) requires both clear and convincing evidence of actual innocence and a constitutional violation, which we have referred to as the "actual innocence plus" standard. In re Davis, 565 F.3d 810, 823 (11th Cir. 2009). Unlike a "typical constitutional claim," such as one arising under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), Giglio

11

v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972), or Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), "the statutory language does not readily accommodate" a freestanding claim of actual innocence.  Davis, 565 F.3d at 823.  Therefore, Everett's first claim fails to meet the statutory criteria.  See 28 U.S.C. § 2244(b)(2)(B)(ii).

**B.    Ineffective Assistance of Counsel**

In his second claim, Everett argues that trial counsel Smith provided ineffective assistance by "[e]ffectively acquiescing to guilt and failing to investigate [Everett's] account of [the] facts, and then limiting his efforts to obtain penalty phase content to merely driving to [Everett's] hometown."  Specifically, Everett contends that, after he gave Smith a thorough account of his activities in Panama City Beach, Smith dismissed his story, stating that he would "not wast[e] resour[c]es investigating it."  Instead, Smith focused his efforts on the penalty phase of the trial, but largely relied on Everett's father to find character witnesses.  Although Smith traveled to Everett's hometown, Smith did not notify Everett or his family in advance and only interviewed six people "as a 'CYA' 'I did my job.'"  Everett states that, had he known of Smith's plans, he would have provided the names and phone numbers of "dozens" of potential character witnesses.  Furthermore, Smith did not attempt to substantiate Everett's history of drug use, and he unreasonably accepted a drug user's opinion that Everett's ex-girlfriends would not make good character witnesses.

According to Everett, Smith's refusal to investigate Everett's account of what happened to victim Bailey "allowed the state to establish a set of 'facts'" that "permeated the opinions of each attorney who has been on this case, all of whom refused to investigate the many layers of this case."  His subsequent attorneys' collective failure to investigate the case "actively facilitated the depletion of all but one of [his] appellate remedies."  Citing Trevino v. Thaler, 569

12

U.S. ___, 133 S. Ct. 1911 (2013), and Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639 (1986), Everett contends that, because he received "egregious and prejudicial" ineffective assistance of counsel "at every phase," he should be "afforded the opportunity to have a meaningful habeas corpus proceeding with the assistance of effective, conflict-free counsel who will exert investigative resources that will ultimately enable [him] to develop facts and produce evidence" in support of his actual-innocence claims.

In support of his arguments, Everett submitted the following exhibits: (1) an undated document containing excerpts of online postings written by Everett's friends, who described him as, inter alia, "fun loving," "caring," and "sweet"; (2) an undated letter from "a good female friend," in which the author wrote that Everett was "never out of line [and] never tried anything" on occasions when she was drunk; and (3) an email that Everett's sister sent, at his request, on July 14, 2014, to the attorney who represented Everett in his original § 2254 proceedings.

Everett's claim that Smith was ineffective for failing to conduct an adequate investigation into potential mitigating evidence is barred because it is the same claim that he raised in his original § 2254 petition. See 28 U.S.C. § 2244(b)(1). Although his current argument focuses on Smith's alleged failure to inform Everett that he was planning to travel to Everett's hometown, the basic thrust of his current and prior claims is the same, namely, that Smith provided ineffective assistance of counsel, in violation of Everett's Sixth Amendment rights, by relying on Everett's father to find character witnesses and failing to make an adequate effort to find and interview witnesses after Everett's father died. See Hill, 715 F.3d at 294.

While Everett's argument that Smith provided ineffective assistance by failing to investigate his account of what happened to Bailey appears to be a new claim, Everett fails to make a prima facie showing that his claim meets the requirements of § 2244(b)(2). See 28

13

U.S.C. § 2244(b)(3)(C).  First, he does not allege, nor does the record reflect, that the attached documents described above could not have been discovered before the conclusion of his initial § 2254 proceedings through the exercise of due diligence.  See Boshears, 110 F.3d at 1540.  Additionally, even if the statements in the documents are true, they do not demonstrate by clear and convincing evidence that, but for Smith's failure to investigate Everett's story, no reasonable factfinder would have found Everett guilty.  See 28 U.S.C. § 2244(b)(2)(B)(ii).

Even assuming that Everett relies on Trevino and Murray as establishing new rules of constitutional law, Murray was decided in 1986, years before Everett filed his original § 2254 petition, and Trevino was decided in May 2013, prior to the denial of his initial § 2254 petition in March 2014.  Trevino, 569 U.S. at ___, 133 S. Ct. at 1911; Murray, 477 U.S. at 478, 106 S. Ct. at 2639; Everett I, 779 F.3d at 1238.  Everett did not allege, much less demonstrate, that amending his initial § 2254 petition to include claims based on Trevino would have been infeasible.  Accordingly, neither Murray nor Trevino is a new rule of law that was previously unavailable, as required by the statute.  See 28 U.S.C. § 2244(b)(2)(A); Hill, 113 F.3d at 182-84.

Based on Everett's statement that his post-conviction attorneys "actively facilitated the depletion of all but one of [his] appellate remedies" by failing to investigate his account of what happened, his application could be liberally construed to also assert a claim that his post-conviction attorneys provided ineffective assistance by failing to investigate his account of the facts.  Everett appears to complain about both his state and his federal post-conviction attorneys, and it is unclear whether any such claim is a constitutional claim that is cognizable in federal habeas.  In any event, such a claim fails to meet the statutory criteria.  See 28 U.S.C. § 2244(b)(3)(C).  As previously noted, neither Trevino nor Murray is a "new" rule of constitutional law, given their availability during the pendency of Everett's initial § 2254

14

proceedings. See id. § 2244(b)(2)(A). As to newly discovered evidence, although the statements in his sister's email, when accepted as true, corroborate Everett's allegations that one of his post-conviction attorneys later failed to investigate his account of the facts, the email does not create a prima facie case that, but for the attorney's failure to investigate, no reasonable factfinder would have found Everett guilty, especially in light of his own confession to the crimes and the other forensic and physical evidence offered against him. See id. § 2244(b)(2)(B)(ii); Everett I, 779 F.3d at 1218-23.

### C.      Coerced Confession

Everett further alleges that his November 27 statement was a "false, forced 'confession' [that was] prompted by extreme duress" and "derived from a severe mental decline stemming from threats of being 'strapped to a table . . . and killed.'" Over the course of the November 14 interview, Everett went from thinking that he was being investigated for bad checks he had written in Florida to believing that he had killed a man and would soon face the death penalty, based on Lieutenant Lindsey's statement that "[they were] gonna strap [Everett] to a table, put needles in [him], and kill [him]." Everett asserts that the interview "sparked a state of mental decline that progressed over the days and weeks that followed." He then spoke with his father and learned that the murder victim was Bailey and that his father had been harassed and threatened.

After Everett gave the November 19 statement, three factors "weigh[ed] heavily on [his] mind" and "proved to be 'the perfect storm' for a false confession": (1) the thought of being executed; (2) the thought of his family contemplating the possibility that he would be executed; and (3) fear for his family's safety. Because of his mental decline and fear for his family's safety, he claims that he gave a false confession that aligned with the police's theory of the

15

crime.  Finally, citing McQuiggin v. Perkins, 569 U.S. ___, 133 S. Ct. 1924 (2013), Everett argues that, although we previously refused to consider his claim when he raised it for the first time in his appeal from the denial of his § 2254 petition, we should "be open to litigation and unbound by procedural bars" because he asserts that he is actually innocent.

Everett fails to make a prima facie showing that his claim meets the requirements of § 2244(b)(2).  See 28 U.S.C. § 2244(b)(3)(C).  Although he refers to the letter written by his stepbrother as corroboration for his allegation that his father was threatened, the letter has no direct bearing on whether he is factually innocent of the crimes for which he was convicted.  As noted previously, a third party's threatening behavior toward Everett's family, even if true, does not demonstrate by clear and convincing evidence that Everett did not rape and murder victim Bailey.  A review of the exhibits he filed in connection with his application also does not reveal any new facts upon which his coerced-confession claim might rely.

Even if his application is liberally construed to assert that his claim is predicated on a new rule of constitutional law created by McQuiggin, his reliance on that case to support this claim is misplaced.  McQuiggin did not announce a new rule of constitutional law.  Rather, the McQuiggin Court expressly stated that its ruling was an equitable one.  See McQuiggin, 569 U.S. at ___, 133 S. Ct. at 1931 (explaining that the petitioner sought "an equitable exception to § 2244(d)(1)"—the federal habeas statute of limitations for persons in custody pursuant to a state court judgment—and "not an extension of the time statutorily prescribed," and that the fundamental-miscarriage-of-justice exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons"); Gore v. Crews, 720 F.3d 811, 817 (11th Cir. 2013) (explaining that, in McQuiggin, the Supreme Court held that "there is an 'equitable exception' to the statute of limitations

applicable to habeas claims, 28 U.S.C. § 2244(d), but only when the petitioner presents new evidence that 'shows it is more likely than not that no reasonable juror would have convicted the petitioner'"). Thus, Everett's claim does not rely on a new rule of constitutional law, as required under 28 U.S.C. § 2244(b)(2)(A).

## IV.  CONCLUSION

Everett has not raised any claims that meet the statutory criteria. Thus, his application for leave to file a second or successive habeas petition is DENIED. His request for appointment of counsel is DENIED AS MOOT.

17