[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15173
_____

D.C. Docket No. 5:15-cv-00439-MTT


MARCUS RAY JOHNSON,

                                                      Petitioner-Appellant,

versus

WARDEN,
Georgia Diagnostic and Classification Prison,

                                                      Respondent-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(November 19, 2015)

Before ED CARNES, Chief Judge, HULL and WILLIAM PRYOR, Circuit
Judges.

PER CURIAM:

Marcus Ray Johnson, a Georgia inmate under a death sentence, filed a 28

U.S.C. § 2241 petition for a writ of habeas corpus in the district court on the eve of

his execution.

## I.  FACTS OF THE CRIMES

The Georgia Supreme Court summarized the facts of Johnson's 1994 crimes

as follows:

> The evidence adduced at trial shows that the victim, Angela
> Sizemore, met Johnson in a west Albany bar called Fundamentals
> between 12:30 and 1:30 a.m. on March 24, 1994.  Ms. Sizemore had
> been to a memorial service for an acquaintance the previous day, and
> she had been drinking so heavily the bar had stopped serving her.
> Johnson was wearing a black leather jacket, jeans, black biker boots,
> and a distinctive turquoise ring.  According to a witness, Johnson was
> angry and frustrated because another woman had spurned his
> advances earlier in the evening.  The bar owner and its security officer
> (who both personally knew Johnson) testified that they saw Johnson
> and Ms. Sizemore kissing and behaving amorously.  Johnson and Ms.
> Sizemore left Fundamentals together; the bartender handed Ms.
> Sizemore's keys directly to Johnson.   They were seen walking
> towards Sixteenth Avenue.

> At approximately 8:00 a.m. on March 24, 1994, a man walking
> his dog found Ms. Sizemore's white Suburban parked behind an
> apartment complex in east Albany, on the other side of town from
> Fundamentals.  Ms. Sizemore's body was lying across the front
> passenger seat.  She had been cut and stabbed 41 times with a small,
> dull knife, and she had bruises and marks from being hit and dragged.
> The fatal wounds were six stab wounds to the heart.  The medical
> examiner also discovered that a foreign object had been inserted into
> the victim's vagina and anus; the object had ruptured the wall of the
> vagina and lacerated the rectum.  He testified that she was alive
> during the stabbing and genital mutilation.

2

Four people testified that they saw Johnson about an hour before the body was found. Two witnesses testified that they saw him walk from the area where the victim's Suburban was parked through an apartment complex to a bus stop. He boarded the bus and asked if the bus would take him to the Monkey Palace (a bar where Johnson worked) in west Albany. Three witnesses, including the bus driver, identified Johnson as being on the bus (one of the witnesses who saw Johnson walk through the apartment complex boarded the same bus as he did). Two witnesses stated that their attention was drawn to Johnson because that area of Albany is predominately African-American, and it was extremely unusual to see a Caucasian there at that time of day. All the witnesses testified that Johnson's clothes were soiled with dirt or a substance they had assumed to be red clay. The witnesses gave similar descriptions of his clothing; in court, two witnesses who sat near Johnson on the bus identified his jacket, boots and distinctive turquoise ring.

The police determined that Ms. Sizemore was murdered in a vacant lot near Sixteenth Avenue in west Albany. Present in the lot were bloodstains, scuff marks, drag marks, and a pecan branch with blood and tissue on one end. The medical examiner testified that this branch was consistent with the object used to mutilate the victim's vagina. The vacant lot is about two blocks from Fundamentals and about half a block from the house where Johnson lived with his mother.

A friend of Johnson testified that after he called her early on March 24, she picked him up at his house at 9:30 a.m. and took him to her home, where he slept on her couch for several hours. Johnson then told her he wanted to take a bus to Tennessee and that he needed her to go to the Monkey Palace to pick up some money he was owed. At his request, she dropped him off near a church while she went to get the money. The police were waiting for Johnson to show up, and they returned with the friend and arrested Johnson. Before they told him why they were arresting him, he blurted, "I'm Marcus Ray Johnson. I'm the person you're looking for."

DNA testing revealed the presence of the victim's blood on Johnson's leather jacket. Johnson had a pocketknife that was consistent with the knife wounds on the victim's body. He had

3

<u>scratches on his hands, arms, and neck.</u>  In a statement, Johnson said he and the victim had sex in the vacant lot and he "kind of lost it." According to Johnson, the victim became angry because he did not want to "snuggle" after sex and he punched her in the face.  He stated he "hit her hard" and then walked away, and he does not remember anything else until he woke up after daybreak in his front yard.  He said, "I didn't kill her intentionally if I did kill her."

In the sentencing phase, the State presented evidence that Johnson assaulted a 76-year-old jailer during an escape attempt by striking the jailer a glancing blow in the head with a gun butt.  The blow "peeled back" part of the jailer's scalp; the wound required 21 staples to close.  The medical doctor who treated the jailer opined that based on the amount of force required to inflict the wound, had the blow directly hit the jailer, it would have crushed his skull and he probably would not have survived.

The evidence adduced was sufficient to enable a rational trier of fact to find Johnson guilty of malice murder, felony murder, aggravated assault, rape and aggravated battery beyond a reasonable doubt.

<u>Johnson v. State</u>, 519 S.E.2d 221, 225-26 (Ga. 1999) (emphasis added).

## II.  PROCEDURAL HISTORY

**A.    1998-2000**

On April 5, 1998, the jury convicted Johnson of the above-stated crimes.  <u>Id.</u> at 225 n.1.  Subsequently, the jury unanimously recommended a death sentence based on four statutory aggravating circumstances, and the state trial court sentenced Johnson to death.  On July 6, 1999, the Georgia Supreme Court upheld the convictions and sentence on direct review.  <u>Id.</u> at 225.  It determined that there was ample evidence for the jury to convict Johnson of each crime and to find the

statutory aggravators.  See generally id.  In February 2000, the U.S. Supreme Court

denied certiorari.  Johnson v. Georgia, 528 U.S. 1172, 120 S. Ct. 1199 (2000).

At trial, Johnson was represented by highly experienced criminal defense

attorneys.  Johnson v. Upton, 615 F.3d 1318, 1323 (11th Cir. 2010).  Counsel

Ronnie Joe Lane had handled hundreds of criminal cases before Johnson's trial,

including about 40 murder trials.  Id.  In all four of his capital murder cases, Lane

had succeeded in securing the defendant a life sentence.  Id.  Lane's co-counsel,

Tony Jones, had 14 years of criminal law experience and had also previously

handled murder cases.  Id.

**B.    2000-2011**

On June 2, 2000, Johnson filed his first state habeas corpus petition.

Johnson was represented by the Georgia Resource Center's attorneys, who are

highly experienced in capital cases and who continue to represent him today.

Johnson raised a number of claims, including that he was innocent of killing

Sizemore, and that the eyewitness identifications were unreliable.  The state habeas

court held a 3-day evidentiary hearing at which Johnson presented testimony from

11 witnesses, affidavits from 35 witnesses, and documentary exhibits.  On January

5, 2004, following the evidentiary hearing, the state habeas court denied Johnson's

habeas petition in a 36-page order.  On July 11, 2005, the Georgia Supreme Court

denied his application for a certificate of probable cause.  The U.S. Supreme Court

denied his petition for a writ of certiorari in 2006.  Johnson v. Terry, 547 U.S. 1059, 126 S. Ct. 1661 (2006).

Subsequently in 2006, Johnson filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus, which the district court denied in 2009.  The district court granted a certificate of appealability ("COA") on three claims of ineffective assistance of counsel, and this Court expanded the COA to encompass a fourth claim.  After careful consideration and oral argument, this Court denied relief on August 23, 2010 in a thorough opinion.  Johnson, 615 F.3d at 1318-44.  On June 20, 2011, the U.S. Supreme Court again denied certiorari.  Johnson v. Upton, 131 S. Ct. 3041 (2011).

## C.    2011 Scheduled Execution

After these federal proceedings concluded, Georgia issued a warrant scheduling Johnson's execution for a window of time between October 5 and October 12, 2011.  On September 27, 2011, mere days before his execution date, Johnson filed an extraordinary motion for new trial and a motion for stay of execution in Georgia state court.  He then filed a second motion for a stay based on newly discovered evidence that was appropriate for DNA testing.  He claimed that he was actually innocent and the eyewitness identifications presented at trial were unreliable.  The state trial court granted a stay on October 4, 2011.

During the extensive proceedings on Johnson's extraordinary motion for new trial, the state stipulated to the DNA testing of 16 new pieces of evidence. Those 16 items were separated into 48 samples for analysis. Johnson selected an independent laboratory to conduct the testing, and the laboratory determined that 13 of the 48 samples could be tested. There was blood, sperm, or another form of DNA on ten of the samples, and the laboratory concluded that Johnson could not be excluded from any of the DNA profiles. Indeed, that fact even further supports his guilt.

On April 20, 2015, with the DNA testing results, and the aid of two evidentiary hearings and multiple experts' testimony, the state trial court denied Johnson's extraordinary motion for new trial. On August 19, 2015, the Georgia Supreme Court denied Johnson's application for a certificate of probable cause. Thereafter, Georgia issued a second warrant for Johnson's execution and scheduled the execution for November 19, 2015.

## D.    2015 Scheduled Execution

Once Georgia set this date, Johnson initiated another round of filings in the state habeas court in Georgia. On November 16, 2015, he filed a motion for a stay of execution and a second state habeas petition, which asserted four claims. Specifically, he alleged that his execution would violate the Eighth and Fourteenth Amendments because: (1) he was factually innocent of murder; (2) eyewitness

7

identifications introduced at trial were unreliable; (3) the evidence was insufficient for him to be convicted of the crimes; and (4) trial and appellate counsel were ineffective for failing to allege that the state's evidence was insufficient to overcome every reasonable hypothesis of innocence.

**E.    November 18, 2015 Ruling Denying Second State Habeas Petition**

In an order issued on November 18, 2015, the state habeas court first dismissed Johnson's second habeas petition on procedural grounds. It determined that Johnson's sufficiency-of-the-evidence claim and his arguments about the reliability of the eyewitnesses were barred by the state law doctrine of res judicata. Johnson's ineffective-counsel claims were barred by Georgia's successive-petition rule, which bars petitioners from bringing claims that could have been asserted during their direct appeal or first state habeas proceeding. Finally, the state habeas court stated that stand-alone claims of actual innocence are not cognizable in state habeas proceedings, and, in any event, Johnson already raised such a claim in his first state habeas action, requiring application of res judicata.

Alternatively, the state habeas court reasoned that even if the miscarriage of justice clause in Georgia Code § 9-14-48(d) made the actual innocence claim cognizable, Johnson could not establish a miscarriage of justice. As the court explained: "[T]he evidence of Petitioner's guilt is overwhelming and Petitioner cannot establish a miscarriage of justice." Further, the recent DNA testing

8

"produced no exculpatory evidence." Thus, the state habeas court's decision, in effect, held that Johnson failed to establish his innocence.

On November 19, 2015, the Georgia Supreme Court unanimously denied Johnson's application for a certificate of probable cause, stating:

> Upon consideration of Johnson's application for a certificate of probable cause to appeal the dismissal of his second state habeas corpus petition, the Warden's response thereto, and the record, the application is denied as lacking arguable merit as a matter of Georgia procedural law. See Supreme Court Rule 36 ("A certificate of probable cause to appeal a final judgment in a habeas corpus case involving a criminal conviction will be issued where there is arguable merit. . . .").

The Georgia Supreme Court also unanimously denied Johnson's motion for a stay of execution.

## F.    November 19, 2015 Section 2241 Petition Filed in District Court

After raising his claims in state court, Johnson filed a § 2241 petition in federal court, alleging essentially the same four claims, albeit in various subparts, as violations of his Sixth, Eighth, and Fourteenth Amendment rights. To repeat the claims in greater detail, Johnson contended that the trial evidence was insufficient to support his convictions, and his trial and appellate counsel were ineffective for failing to argue that the state did not carry its evidentiary burden. Johnson alleged that the evidence against him was purely circumstantial, and asserted that in Georgia a conviction based on circumstantial evidence must be overturned unless the facts exclude every reasonable hypothesis of the crime but for the defendant's

guilt.  See Ga. Code Ann. § 24-14-6.  He claimed that, had his trial and appellate attorneys relied on this rule in his motion for new trial and appellate briefs on direct appeal, the state trial court or state appellate court would have vacated his convictions.

Johnson also argued that new evidence showed that the eyewitnesses who identified him were unreliable.  He alleged that, had the recent statistics and evidence of the inaccuracy of eyewitness testimony been available at the time of his trial, the state court would have allowed an expert to testify on the general reliability of eyewitness testimony and the reasons why the identifications in Johnson's case were not trustworthy (reasons that were allegedly developed during his first state habeas case).  Johnson argued that the harm caused by the unreliable testimony and the absence of an expert witness was aggravated by the fact that the Georgia trial court gave a no-longer-used pattern jury instruction, which informed the jury that the accuracy of an identification could be inferred from the witness's confidence in the identification.  He contended that, had he been allowed to present an expert and properly instruct the jury, he would have been acquitted.

Building on the preceding claims, Johnson argued that the evidence presented at his trial and developed during his multiple post-conviction proceedings showed that he was actually innocent of murdering Sizemore.  He

asked for a stay of his November 19, 2015 execution and the vacatur of his convictions as relief for the alleged constitutional violations.

In response, the state filed a motion to dismiss, arguing that the district court lacked jurisdiction to entertain Johnson's § 2241 petition.  It asserted that Johnson's § 2241 petition was, in substance, a second or successive § 2254 petition, for which he had not obtained authorization from this Court to file as required by 28 U.S.C. § 2244(b)(3)(A).  Because Johnson did not comply with the requirements of § 2244(b)(3)(A), the state contended, the district court could not entertain the petition and was required to dismiss it.

In a November 19, 2015, order, the district court dismissed Johnson's § 2241 petition for lack of jurisdiction.  The district court found that Johnson's § 2241 petition was truly a second or successive § 2254 petition that he did not have this Court's authorization to file.  Having determined that it lacked jurisdiction over the petition, the district court then denied Johnson's motion for a stay of execution and denied a COA.

In this Court, Johnson has filed: (1) a notice of appeal; (2) a "request for COA and appeal from denial of petition for writ of habeas corpus pursuant to 21 U.S.C. § 2241, or alternatively, application for permission to file a second petition for writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2244(b)(2)(A)"; (3) a request for expedited review; and (4) a motion for stay of

11

execution.  The state has filed a "response in opposition to appeal from the dismissal of petitioner's improperly filed successive federal petition, response in opposition to successive petition and response in opposition to stay."  Johnson then filed a reply brief in support of his position.

### III.  DISCUSSION

Having set out the facts and procedural history of this case and given the last-minute nature of the filing before us, we shall be brief.

### A.    District Court Lacked Jurisdiction

Petitioner Johnson seeks to appeal the district court's order dismissing his § 2241 petition for lack of jurisdiction.  In order to appeal from the dismissal of a § 2241 petition, a state prisoner must obtain a COA.  Sawyer v. Holder, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003) ("Based on the statutory language of 28 U.S.C. § 2253(c)(1), state prisoners proceeding under § 2241 must obtain a COA to appeal."); Medberry v. Crosby, 351 F.3d 1049, 1063 (11th Cir. 2003).  When the district court disposes of a § 2241 petition on procedural grounds, in order to obtain a COA, the petitioner must demonstrate that jurists of reason would find debatable both (1) whether the petition states a valid claim of the denial of a constitutional right, and (2) whether the district court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 1604 (2000); see 28 U.S.C. § 2253(c)(2).  For the reasons outlined below, we easily conclude

12

that the district court was correct in its procedural ruling that it lacked subject matter jurisdiction and no jurists of reason would find this issue debatable. Thus no COA should issue. We explain why.

It is axiomatic that § 2254 applies where a prisoner is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). Johnson is in custody pursuant to the judgment of the Georgia court and, therefore, § 2254 applies to his petition. See Thomas v. Crosby, 371 F.3d 782, 787 (11th Cir. 2004); see also Medberry, 351 F.3d at 1059-62. Importantly, a state prisoner cannot evade the procedural requirements of § 2254 by characterizing his filing as a § 2241 petition, which is what Johnson has done here. Thomas, 371 F.3d at 787 ("If the terms of § 2254 apply to a state habeas petitioner . . . then we must apply its requirements to him."); see also Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351 (11th Cir. 2008) ("[A] prisoner collaterally attacking his conviction or sentence may not avoid the various procedural restrictions imposed on § 2254 petitions . . . by nominally bringing suit under § 2241."). A § 2241 petition filed by a state prisoner is subject to the bar on second and successive petitions contained in § 2244(b).

Under 28 U.S.C. § 2244(b), a state prisoner who wishes to file a second or successive habeas corpus petition "under Section 2254" must move the court of appeals for an order authorizing the district court to consider such a petition. See 28 U.S.C. § 2244(b)(2), (b)(3)(A). That requirement cannot be evaded by

characterizing the petition as one filed under § 2241 instead of § 2254. Johnson's position–that a habeas petitioner can evade any and all of the Antiterrorism and Effective Death Penalty Act's ("AEDPA") restrictions set out in §§ 2244 and 2254 by the simple expedient of labeling the petition as one filed under § 2241–has no merit whatsoever. Among other things, it would render the AEDPA amendments to §§ 2244 and 2254 a nullity and mean that scores of Supreme Court decisions, and thousands of lower court decisions, are utterly pointless.

Although Johnson relies heavily on the Supreme Court's decision in United States v. Davis, 557 U.S. 952, 130 S. Ct. 1 (2009), that decision involved an original petition for writ of habeas corpus filed directly in the United States Supreme Court. Davis, 557 U.S. at 952, 130 S. Ct. at 1. This not the Supreme Court and Johnson has not filed an original petition there. Nothing in Davis undermines our above precedent that § 2254 and in turn the requirements of § 2244(b) apply to state prisoner Johnson's instant habeas petition filed in the district court.

**B.    Application to File Successive Habeas Petition**

Alternatively, Johnson has filed an application for permission to file a successive § 2254 petition. We deny that application for numerous reasons.

First, certain of Johnson's claims were made in his first § 2254 petition and for that reason are barred by 28 U.S.C. § 2244(b)(1) (stating that claims presented

14

in a successive federal habeas petition that were presented in a prior application shall be dismissed).

Second, to the extent Johnson asserts that he has some newly discovered evidence or new law to support his claims, he also failed to meet the requirements of § 2244(b)(2). Under that provision, this Court may grant authorization to consider a second or successive habeas petition only in two narrow exceptions where:

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(A)-(B) (emphasis added).

Johnson does not argue that any of his claims rely on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. Id. § 2244(b)(2)(A). And he has not alleged, much less shown, that (1) the factual predicate for his claims could not have been discovered previously through the exercise of due diligence or (2) that the facts underlying his claims, if proven, would establish by clear and convincing

15

evidence that, <u>but for constitutional error</u>, no reasonable factfinder would have found him guilty of the underlying capital murder.  <u>Id.</u> § 2244(b)(2)(B).

## C.    Actual Innocence Claim

It is not settled whether a freestanding actual innocence claim is viable in a capital case on federal habeas corpus review.  <u>See</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 417, 113 S. Ct. 853, 869 (1993); <u>In re Davis</u>, 565 F.3d 810, 816 (2009); <u>Jordan v. Sec'y Dep't of Corr.</u>, 485 F.3d 1351, 1356 (11th Cir. 2007) ("[O]ur precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases.").  That question is not presented here.  Instead, the question we face is whether Johnson can bring his actual innocence claim in a second or successive petition.  To do so, he must still satisfy the requirements of § 2244(b)(2)(B).  Even assuming that Johnson could meet the requirement of due diligence in § 2244(b)(2)(B), his claims would fail because he has not asserted, much less shown, both actual innocence <u>and</u> an underlying "but for" constitutional violation.  In <u>In re Davis</u>, 565 F.3d at 823, this Court held that § 2244(b)(2)(B)(ii) "requires <u>both</u> clear and convincing evidence of actual innocence . . . <u>as well as</u> another constitutional violation."  We recently reiterated that "§ 2244(b)(2)(B) undeniably requires a petitioner seeking leave to file a second or successive petition to establish actual innocence by clear and convincing evidence <u>and</u> another constitutional violation."  <u>In re Lambrix</u>, 776 F.3d 789, 796

16

(11th Cir. 2015) (emphasis added) (quotation marks omitted). This Court has called this the "actual innocence plus" standard. See In re Everett, 797 F.3d 1282, 1290 (11th Cir. 2015). Accordingly, Johnson's actual innocence claim is not cognizable under 28 U.S.C. § 2244(b)(2)(B) because he has not shown a separate constitutional violation. See id. at 1290-93; see also In re Lambrix, 776 F.3d at 796.

And in any event, Johnson's "newly discovered evidence" is patently insufficient in light of the wealth of evidence proving guilt. Section 2244(b)(2)(B) requires successive petitioners to establish actual innocence by "clear and convincing evidence." Johnson has come nowhere near satisfying the "clear and convincing evidence" standard. This is not a case, like Davis, in which seven of the state's key witnesses recanted their trial testimony, several individuals implicated the state's principal witness as the shooter, and scores of postconviction affidavits existed that, if reliable, would satisfy the threshold showing for a "truly persuasive demonstration of actual innocence." Davis, 557 U.S. at 953, 130 S. Ct. at 1 (Stevens, J., concurring). Johnson has not come close to showing that he is actually innocent.

## IV. CONCLUSION

For the past 18 years, Johnson has challenged the convictions and sentence of death entered against him in 1998. State and federal courts have already granted

17

him evidentiary and other hearings and considerable, exhaustive review multiple times.  During his many 1998-2015 proceedings, as well as these last-minute filings on the eve of his execution, Johnson has failed to show any grounds for federal relief.

Johnson's request for expedited review is **GRANTED**.  His application for a COA as to the district court's order, his application for this Court's permission to file a second or successive petition, and his motion for a stay of execution are **DENIED**.